JAMES R. C. FIELD ET AL. V. NATIONAL COUNCIL OF KNIGHTS AND LADIES OF SECURITY.

FILED MARCH 19, 1902.   No. 11,267.

Commissioner's opinion, Department No. 1.

1. **Insurance:** MUTUAL BENEFIT ASSOCIATION: PAYMENT OF ASSESSMENTS: DEFAULT: SUSPENSION WITHOUT NOTICE: BY-LAWS: SELF-EXECUTING PROVISIONS. By-laws of a mutual benefit association, providing for the payment of assessments made during the month on a certain day, and for suspension, without notice, of members in default, are self-executing, and the suspended member is not entitled to notice.

2. **Local Council:** FINANCIAL SECRETARY: IMPLIED AUTHORITY: PAYMENT OF ASSESSMENTS: WAIVER. The financial secretary of a local council in such an order has no implied authority to waive any of the provisions of the by-laws governing the payment of assessments.

3. **Sick Benefits:** BY-LAWS. In order to obtain sick benefits as provided in the by-laws, a member must bring himself within their terms.

ERROR from the district court for Gage county. Tried below before LETTON, J. *Affirmed.*

*F. N. Prout, Griggs, Rinaker & Bibb* and *S. D. Killen,* for plaintiffs in error.

*George A. Huron* and *George A. Murphy, contra.*

DAY, C.

The plaintiffs bring this proceeding in error to review a judgment of the district court of Gage county, based upon a verdict for the defendant returned in obedience to the peremptory direction of the trial court. The defendant is a fraternal mutual benefit association organized under the laws of the state of Kansas, with its head office at Topeka, and licensed to transact business in Nebraska. The defendant organization is founded upon the lodge system, with subordinate councils in various cities, having a ritualistic form of work, and embracing in its scope fraternal

and social features, as well as indemnity in case of disa-
bility or death. The insured died April 14, 1897. In her
lifetime, Jennie E. Field became a beneficiary member of
one of these subordinate councils, located in the city of
Beatrice, Nebraska; and on January 14, 1895, there was
issued to her a beneficiary certificate, whereby the defend-
ant agreed in case of her death to pay to certain benefi-
ciaries named therein the sum of $3,000, subject to certain
conditions and stipulations, one of which was as follows:
"This certificate is issued upon the express condition that
the said insured shall, in every particular, while a member
of the order, comply with all the laws, rules and require-
ments thereof, and shall at her death be a member in good
standing of said order." The by-laws of the association
provided for the payment by its beneficiary members of
certain fixed assessments upon the death of any member
entitled to participate in the beneficiary fund, which sum
was to be paid to the local treasurer of the council within
a given period, and in default of such payment the bene-
ficiary certificate lapsed and became suspended. The by-
laws also contained provisions for suspension of its bene-
ficiary certificates for the non-payment of quarterly
dues. The by-laws also contained liberal provisions for
the reinstatement of any suspended member within a given
period from the date of suspension. These need not be
set out, as it is not contended that the insured was rein-
stated after her suspension. Section 11, article 14, of the
by-laws provided as follows: "Any member suspended or
expelled from the order for any cause whatever, forfeits
all claims to the beneficiary fund during said suspension
or expulsion." The record is clear that the insured did
not pay the assessment made for the benefit of the bene-
ficiary fund for the month of June, 1895, or for any of the
following months during that year, although assessments
were made in each month. Neither did she pay her quar-
terly dues during that period. For the failure to pay
the dues and assessments she was suspended by the
action of the local council, and her name was stricken

from the rolls of the local council, as well as the national council, in July, 1895. No attempt was made to be reinstated, although her husband, who transacted the business for her, was repeatedly importuned by members of the local council to pay up the arrearages and have her reinstated. The plaintiffs do not deny the failure of the insured to pay the assessments and dues, or that she was suspended for such failure, but seeks to avoid the effect thereof upon three grounds, which will now be considered.

It is first insisted that the insured never had any notice of her suspension from the local council, and therefore she is not bound thereby. A careful examination of the rules respecting the suspension of members indicates that no notice of suspension to its members is required. In this respect the rules are self-executing. Section 3, article 14, of the by-laws refers especially to the subject of suspension for the non-payment of assessments, and, among other things, provides as follows: "The certificate of each member who has not paid such assessment on or before the 28th of said month shall, by the fact of such non-payment, stand suspended, and no action on the part of the council or any officer threeof shall be required as essential to such suspension." These provisions of the by-laws are clear and explicit that no notice of suspension is required.

The next contention of the plaintiffs is based upon the plea of a waiver of the prompt payment of the dues and assessments by an agreement with the financial secretary of the local council, whereby the time of payment of the beneficiary assessments on the certificate was extended to January, 1896. The testimony of the plaintiffs and defendant upon this phase of the case presents the only conflict of evidence in the record. The husband of the insured testified that he paid the dues of his wife owing to the local council up to and including July, 1895, and at that time he had a conversation with the financial secretary of the local council, which is developed by the following questions and answers:

Q. Now just state to the jury what conversation you

had, if any, in July, 1895, with H. S. Woodruff, financial secretary of the defendant, the Knights and Ladies of Security, in relation to the further payment of assessments and local lodge dues for the next ensuing six months.

A. Why, I went to Mr. Woodruff's place of business and he told me that I didn't need to pay the assessment. He said that I could let it run until January, and wouldn't be running any risk whatever.

Q. What, if anything, did he say at that time in relation to paying the local dues?

A. Why, he said if I kept up the local dues, why the others could run six months. That would be January, 1896.

Q. In relation to all other dues and assessments, except the local dues, what did he say in relation to giving time upon them, if anything?

A. Why, he said if I would pay the local dues, why I could have six months' time on the other, and wouldn't be running any risk.

The testimony was received over the objection of the defendant that it was seeking to change the constitution and by-laws of the national council in relation to dues, fees and assessments by the parol evidence of a subordinate officer of the local lodge. While this evidence respecting the extension of time of payment, etc., was denied by Woodruff, the former financial secretary of the local council, still, if it was competent to be considered in evidence, then a disputed question of fact is presented, which, under the well recognized rule in this state, should have been submitted to the jury. We do not think the evidence of Field, above quoted, was admissible. Nowhere in the constitution and by-laws of the defendant society is authority conferred upon the financial secretary of a subordinate council to make the contract claimed to have been made, or to waive the prompt payment of the assessments. It was not sought to be shown that Woodruff had any special authority to make the agreement. His official position as an officer of the local council alone is relied upon as such

authority. The case of *Borgraefe v. Knights of Honor*, 22 Mo. App., 127, is so in point upon the question here presented that we quote therefrom with approval as follows: "The subordinate lodges are no doubt the agents of the supreme lodge in dealings with the members for many purposes, and in those cases where the subordinate lodges act through their ministerial officers, and where the latter act is in conformity with the rules governing the lodges and the order, these officers may become *pro hac vice* the agents of the subordinate lodges. But it is not shown to us that these officers are anywhere endowed with power to set aside the rules of the order, or that the subordinate lodges are endowed with such a faculty. On the other hand, it is perceived by the provisions of the laws of the order above quoted, that no grand lodge has power even to alter or amend the laws governing the subordinate lodges. The doctrine of waiver, which is often appealed to to prevent forfeitures in the case of policies of insurance, has no application to the forfeitures of memberships in these orders. The laws and rules governing the different branches of such an order are in the nature of contracts among all the members, and, considering the widespread extent of these organizations, and the very great extent to which these schemes of benevolence have taken the place of life insurance, especially among the working classes, it is highly important as a principle of public policy that, in cases of this kind, their rules and regulations should be substantially upheld by the judicial courts." *State v. Temperance Benevolent Ass'n*, 42 Mo. App., 485; *Karcher v. Supreme Lodge Knights of Honor*, 137 Mass., 368; *Hall v. Supreme Lodge Knights of Honor*, 24 Fed. Rep., 450; *Rood v. Railway, etc., Ass'n*, 31 Fed. Rep., 62.

Lastly it is urged that by reason of the sickness of Jennie E. Field, from which she never recovered, she was not bound to pay her beneficiary assessments, but, under the rules of the society, it was the duty of the subordinate council to pay the same, and keep her in good standing in the order. The constitution contains a provision respect-

ing sick benefits to be paid to those members who are un·
able to follow their usual business avocations, but only
in the manner prescribed by the by-laws.  The receipt of
these benefits by any member of the order is conditioned
upon the member coming before the council and making a
statement "that owing to sickness of himself or family, or
from lack of employment, that he is unable to pay his
assessment."  It is then made the duty of the president to
appoint a committee of three to look into the matter, and
if they find the case as stated, the council shall then keep
the member in good standing until such time as the mem·
ber is able to resume his payments.  There is no proof in
the record which even tends to show that the insured ever
took any of the necessary steps to entitle her to receive
sick benefits, or to impose upon the local council the duty
of keeping her assessments paid.

There was no competent testimony which raised a dis·
puted question of fact, and it was therefore the duty of
the court to direct a verdict.  We think the action of the
trial court in directing a verdict for the defendant is
clearly right.

We therefore recommend that the judgment of the dis·
trict court be affirmed.

HASTINGS and KIRKPATRICK, CC., concur.

By the Court.: For the reasons stated in the foregoing
opinion, the judgment of the district court is

AFFIRMED.

NOTE.—The following decision has been rendered by the State In·-
surance Department:

"LINCOLN, NEBR., Sept. 11, 1902.—*Hon. W. F. Bryant*—DEAR SIR: Re·-
plying to your favor in the matter of beneficiary under a certificate
issued by a fraternal beneficiary society, or more particularly
whether or not an organization known as the Franciscan Sisterhood
can under our laws become a legal beneficiary, and if not can pay-
ment by such a society be legally made to a grandson of the insured?

"The general rule is that where a statute of a state designates who
can become beneficiaries then no others can be made the legal bene·
ficiaries.  The laws of this state authorizing such companies to in-

corporate or transact business in the state in section 94, chapter 43. Compiled Statutes, provides that 'payment of death benefits shall only be made to the families, heirs, blood relations, affianced husband or affianced wife of or to persons dependent upon the member.' I am of the opinion that as such organizations as the Franciscan Sisterhood or any other organization is not mentioned or contemplated in the law, in case of death of the insured payment under a certificate could not legally be made to such a sisterhood.

"I am also of the opinion that a grandson of insured is not such relationship to insured as is contemplated in the section above recited; consequently could not legally become the beneficiary under a certificate issued by such an order. If the grandson is under age, it might be possible for the insured to adopt him and thereby make him the legal beneficiary. Yours truly,

"CHARLES WESTON, *Auditor*.

"H. A. BABCOCK, *Deputy, Insurance Department*."

*Insurable Interest in the Life of the Assured.*—Policy payable to religious society—on the life of one of its members. *Trinity College v. Travelers' Ins. Co.*, 18 N. E. Rep. [N. Car.], 175.

*Relatives.*—"The natural affection in cases of this kind[,] is considered more powerful—as operating more efficaciously—to protect the life of the assured than any other consideration. But in all cases there must be a reasonable ground, founded upon the relations of the parties to each other, either pecuniary or of blood or affinity, to expect some benefit or advantage from the continuance of the life of the assured. Otherwise the contract is a mere wager, by which the party taking the policy is directly interested in the early death of the assured." *Warnock v. Davis*, 104 U. S., 779. A *sister* has an insurable interest in the life of a *brother* from mere relationship. *Ætna Life Ins. Co. v. France*, 94 U. S., 561; but see *Lord v. Dall*, 12 Mass., 115, 7 Am. Dec., 38. A *brother* has no insurable interest in the life of a *brother*. *Lewis v. Phœnix Mutual Life Ins. Co.*, 39 Conn., 100. A *wife* has an insurable interest in the life of her *husband*. Divorce subsequent to such policy, does not vitiate such policy. *Connecticut Mutual Life Ins. Co. v. Schaefer*, 94 U. S., 457; *McKee v. Phœnix Ins. Co.*, 28 Mo., 383? A woman living with a man to whom she is not married, has an insurable interest in his life. *Equitable Life Assurance Society v. Paterson*, 41 Ga., 338. If the beneficiary is the wife of the insured, the fact that she is named in the policy by another name, does not vitiate the policy. *Durian v. Central Verein*, 7 Daly [N. Y.], 168. A *fiancée* has an insurable interest in the life of her *betrothed husband*. *Chisholm v. National Life Ins. Co.*, 52 Mo., 213. Mere relationship does not give the *son* an insurable interest in the life of the *father*. *Guardian Mutual Life Ins. Co. v. Hogan*, 80 Ill., 35, 22 Am. Rep., 180. A *grandson* has an insurable interest in the life of a *grandfather* who resides with him. *Elkhart Mutual Aid Ass'n v. Houghton*, 103 Ind., 286. A *mother* has an insurable interest in the life of her *son*. *Reef v. Union Life Ins. Co.*, cited 18 Central Law Journal, 347. An *adopted son* has an insurable interest in the life of his *foster father*. *Carpenter v. U. S. Ins. Co.*, 28 Atl. Rep., [Pa.], 943. Mere relationship does not give a *daughter* an insurable interest in the life of her *mother*. *Continental Life Ins. Co. v. Volger*, 89 Ind.,

572. A *grandchild* has no insurable interest in the life of a *grandparent.* *Burton v. Connecticut Mutual Life Ins. Co.*, 119 Ind., 207. An *uncle* has no insurable interest in the life of a *nephew.* *Singleton v. St. Louis Mutual Ins. Co.*, 66 Mo., 63, 27 Am. Rep., 321. A *nephew* has no insurable interest in the life of an *aunt* (*Appeal of Corson*, 113 Pa. St., 438); nor a *son-in-law* in the life of a *mother-in-law* (*Rombach v. Piedmont Ins. Co.*, 35 La. Ann., 233). In a number of cases, it has been declared that relationship *ipso facto* gives the *parent* an insurable interest in the life of the *child*, except (as stated in some cases) when the child is of age, and *vice versa. Mitchell v. Union Life Ins. Co.*, 45 Me., 104. *Valley Mutual Life Ass'n v. Teewalt*, 79 Va., 421.—REPORTER.