AMANDA PRINGLE V. MODERN WOODMEN OF AMERICA.*

FILED APRIL 18, 1906. No. 14,294.

1. **Beneficial Associations: FORFEITURE: WAIVER.** It is a settled law of this state that if a beneficiary insurance association, like the defendant in error in this action, continues to collect dues and mortuary assessments from a member who has forfeited his beneficiary certificate, after knowledge of such forfeiture by its officers or agents intrusted with the duty of making assessments, it shall be held to have waived such forfeiture, without regard to any restrictions or limitations incorporated in its certificates of membership or by-laws with respect to the power or authority of such persons to make such waivers.

___

* Rehearing allowed. See opinion, p. 388, *post.*

2. **Principal and Agent.** It is the duty of an agent to communicate to his principal every fact affecting the transaction intrusted to his care which comes to his knowledge in course of or during its performance, and this duty, in an action between the principal and the adverse party, the agent is, with certain exceptions noted in the opinion, conclusively presumed to have obeyed.

ERROR to the district court for Deuel county: HANSON M. GRIMES, JUDGE. *Reversed.*

*G. C. McAllister,* for plaintiff in error.

*W. H. Thompson* and *T. S. Allen, contra.*

AMES, C.

There is no conflict in the evidence with respect to the facts essential to the determination of the rights of the parties to this action which was tried by the court alone, a jury having been waived.

Frank W. Pringle was a member of the defendant society holding a beneficiary certificate in favor of his mother, the plaintiff, which contained a clause to the effect that it shall become null and void if, while such a member, he should become convicted of a felony. While such member he was convicted of a felony, in consequence of which he was sentenced to serve a term in the Nebraska state penitentiary, where he died about six months afterwards. After Pringle had been arrested for the offense of which he was subsequently convicted, but before his trial, he deposited with the clerk of the local camp a sum of money sufficient to pay his dues and assessments, thereafter to accrue, for the term of four months, and directed the clerk so to apply it as such obligations should mature. This direction the clerk obeyed by remitting the required sums monthly to the head camp; such remittances being made all, or nearly all, of them after the conviction and with the knowledge by the clerk of that fact. After the fund had become exhausted, the plaintiff paid to the clerk two successive instalments which were received and trans-

mitted by him to the head camp in the usual manner. Pringle died on the 6th day of September, without ever having been in default of dues, or assessments, and a member in good standing, so far as appeared from the books and records of the order, and was buried by, and with the rites and ceremonies of, the local camp as having died in full fellowship therewith. After his death an officer or agent of the head camp made or attempted to make a tender to the plaintiff of the sums accepted as dues and assessments after the date of conviction. The evidence with respect to what occurred in this transaction and as to .the formal sufficiency of the attempted tender, is somewhat conflicting, but, in our view of the matter, the fact is not material. A suit on the membership certificate resulted in a judgment for the defendant.

In our opinion, the case is ruled by *Modern Woodmen of America v. Colman,* 64 Neb. 162. It was there held, and it was twice reaffirmed in the same case, that "it is a settled law of this state that if a beneficiary insurance association, like the plaintiff in error in this action, continues to collect dues and mortuary assessments from a member who has forfeited his beneficiary certificate, after knowledge of such forfeiture by its officers or agents intrusted with the duty of making assessments, it shall be held to have waived such forfeiture, without regard to any restrictions or limitations incorporated in its certificates of membership or by-laws with respect to the power or authority of such persons to make such waivers." And it is said in the opinion: "It cannot be regarded as material upon what ground or for what reason such forfeiture was incurred." *Field v. National Council, K. L. S.,* 64 Neb. 226, and *Royal Highlanders v. Scovill,* 66 Neb. 213, both cited and chiefly relied upon by the plaintiff in error herein, are not in conflict with the principles above quoted. In the former of these cases the officer of the local body, charged with collection of dues and mortuary assessments, had undertaken by agreement with the insured to extend the time within which payment of them

should be made, and the latter relying upon such agreement had died several months in arrears. It was correctly held that the local official had no authority to waive or amend the by-laws of the association or the contract of the parties. In the latter of the cases cited the insured, a woman, was in suspension for default of overdue payments, and the contract stipulated that she could not be reinstated unless when in good health. The husband persuaded the local officer to accept the delinquent dues on the day of her death, concealing from him the fact of her mortal illness and dying condition, and the payment was repudiated as soon as the fact became known. There is no question as to the correctness of these decisions, but the cases are as unlike the one at present under discussion as can well be imagined. There is a plain distinction between the cases cited and the *Colman* case and the one at bar, which is not always observed by counsel or even by the courts. It is not held in any of them that the agent has authority to waive a forfeiture or any condition of the policy or contract. But as is shown at some length in *Hargadine, McKettrick Dry Goods Co. v. Krug*, 2 Neb. (Unof.) 52, it is the duty of an agent to communicate to his principal every fact affecting the transaction intrusted to his care which comes to his knowledge in the course of or during its performance, and this duty, in an action between the principal and the adverse party, the agent is conclusively presumed to have obeyed, except when, in extreme cases, it is shown that the agent, with the knowledge of the opposite party, has repudiated his agency or has acted fraudulently under such circumstances as to apprise the latter that the communication has not been, and probably will not be, made, or it is the intent of the latter that it shall not be made, or he is in some way implicated with the default of the agent. There are no circumstances in this record bringing the case within the exceptions. There is no evidence that the insured or his beneficiary acted fraudulently or in confederation with the local agent, or suspected, or had reason so to do, that

he would neglect his duty in any respect. In the absence of this exception the presumption is that the clerk of the camp seasonably communicated the fact of Pringle's conviction to the head camp and that the latter, by accepting and retaining the money without objection until after the death of the insured, waived the forfeiture. This, which is the doctrine of *Modern Woodmen of America v. Colman, supra,* and the cases there cited, and of a long line of other cases in this court, is accurately applicable to the case at bar, and requires that the judgment of the district court be reversed and a new trial granted, which we recommend be done.

OLDHAM and EPPERSON, CC., concur..

By the Court: For the reasons stated in the foregoing opinion, it is ordered that the judgment of the district court be reversed and a new trial granted.

REVERSED.

The following opinion on rehearing was filed July 12, 1907. *Judgment of reversal adhered to:*

1. **Beneficial Associations: AGENTS.** A subordinate lodge of a mutual benefit society and its clerk, who is designated by the supreme lodge to receive and forward dues and assessments from certificate holders, are agents of the supreme lodge.

2. **Forfeiture: WAIVER.** The collection of dues and assessments from a member of the order, convicted of a felony, by the clerk of such subordinate lodge, with full knowledge of that fact, which are forwarded to and retained by the supreme lodge until after the death of the member, amounts to a waiver of a forfeiture of his benefit certificate on the ground of such conviction.

BARNES, J.

For a full statement of the facts involved in this controversy, see our former opinion, *ante,* p. 384, where we held that the forfeiture relied on to defeat a recovery on the benefit certificate in suit was waived. A rehearing was allowed, and it is now strenuously contended that the

acts of the local camp and its clerk did not have that effect. It is claimed that the forfeiture clause contained in the by-laws of the association was self-acting, and when the deceased member was convicted of a felony it *ex proprio vigore* expelled him, and he was no longer a member of the order. This may be conceded, and yet there may be a recovery in this case. The association had the power to waive the forfeiture, retain the member, and continue his benefit certificate in force. And so the real question for determination is, has there been such a waiver?

It appears that Frank W. Pringle became a member of the defendant association in May, 1900, and the benefit certificate in question was issued and delivered to him on the 30th day of June, of that year. He paid all of his dues and assessments up to and including the 15th day of April, 1901, when he was convicted of a felony. He was, up to that time, a member of the association in good standing, and, desiring to continue so and keep his certificate in force for the benefit of his mother, he, together with the clerk of his local camp, examined the by-laws of the order for the year of 1897, which were then in the hands of that officer and were the only by-laws to which they had access, but found nothing therein to prevent him from keeping up his payments and retaining his membership. He thereupon deposited with the clerk a sum of money sufficient to pay his dues and assessments for some months, with instructions to forward the same to the head camp as required. When the money so left with the clerk was exhausted, the beneficiary was notified of that fact, and she thereafter continued to make the necessary payments until after Pringle's death, which occurred on the 6th day of September, 1901. It further appears that he was buried under the auspices of the order by the local camp, with full knowledge on the part of the members thereof of the foregoing facts. Thereafter proofs of death were forwarded to the head camp, with a demand for the payment of the benefit certificate, which was refused, for the reason that the deceased was not a member of the order

at the time of his death. An attempt was made to return the amount paid to the association by the deceased and his beneficiary after his conviction, but she refused to receive or retain the money thus tendered.

That the clerk of the local camp who, as shown by the record, was authorized to collect dues and assessments and forward them to the head camp was the agent of the association is too well settled by authority to be now an open question. *Bragaw v. Supreme Lodge, K. L. H.,* 128 N. Car. 354, 54 L. R. A. 602; *Trotter v. Grand Lodge of Iowa, L. H.,* 132 Ia. 513; *Coverdale v. Royal Arcanum,* 193 Ill. 91; *Supreme Tent, K. M. W., v. Volkert,* 25 Ind. App. 627; *Wagner v. Supreme Lodge, K. L. H.,* 128 Mich. 660; *Stylow v. Wisconsin O. F. M. L. Ins. Co.,* 69 Wis. 224; *Knights of Pythias v. Kalinski,* 163 U. S. 289. It is also well settled that such local camp or lodge of such an organization is the agent of its governing body. *Coverdale v. Royal Arcanum, supra.* The local camp and its clerk being the agents of the association, the conclusive presumption, in the absence of fraud, is that they seasonably communicated the fact of Pringle's conviction to the head camp. Indeed, the clerk testified that the governing body knew of that fact, and his statement stands unchallenged, except by the evidence of one C. W. Hawes, the head clerk of the association. A like state of facts has often been held to amount to a waiver of a similar forfeiture clause. In *Supreme Lodge, K. H., v. Davis,* 26 Colo. 252, it was held that a benevolent association which issues a benefit certificate to a member on condition that he is under a certain age waives the right to make an objection on this point by acceptance of assessments after knowledge that the member was above the age stated when the certificate was issued; that subordinate lodges and their officers who collect assessments for, and which are accepted by, the supreme lodge are agents of such governing body, and notice to such agents will be deemed notice to their principals.

*Supreme Tent, K. M. W., v. Volkert, supra,* was a case

where the by-laws of the association, which were a part of the contract of insurance between it and its members, provided that if a member should engage in the sale of intoxicating liquors his certificate should become void from the date of engaging in such occupation, without any action on the part of the officers of the society, and that the receipt of assessments from such member after his engaging in a prohibited occupation should not be a waiver of the condition. The assured engaged in the business of selling intoxicating liquors, which fact was known to the local authorities to whom he paid his dues, and the society retained and received the last assessment, with notice of the fact that the member died while engaged in the prohibited occupation. It was held that the association was estopped from asserting that the certificate was forfeited.

In *Alexander v. Grand Lodge, A. O. U. W.*, 119 Ia., 519, it was said: "One asserting the right to pay under a valid certificate, and allowed to do so by the officer having authority to determine whether or not such payments should be received, is certainly justified in relying on the statement of such officer, and the association is estopped from insisting by way of defense on any fact which would have been a proper ground for refusing, when the dues are offered, to recognize the certificate as valid, provided such fact is known to the association through such officer, or there is such notice of the fact as to charge the association or its officers with knowledge thereof."

In *Trotter v. Grand Lodge of Iowa, L. H., supra,* it was held that the rule that courts will give effect to any act or circumstance from which it may fairly be argued that the insurer has waived the right to strict and literal performance by the insured, or upon which an estoppel against forfeiture may be founded, applies to fraternal or lodge insurance. And whether a waiver of forfeiture of a certificate of insurance will be found in any particular case depends not on the intention of the insurer against whom it is asserted, but on the effect which its conduct or course

of business has had upon the insured, and this rule is applicable where the insurer acts under a mistake.

In *Modern Woodmen of America v. Colman,* 68 Neb. 660, we held that a forfeiture incurred by the holder of a life insurance policy or contract is waived, if the company, with knowledge of the facts, subsequently collects premiums, dues or assessments on account of the contract, and retains them, without objection, until after the death of the insured; that it is the duty of the agent to make known to his principal all facts concerning the service in which he is engaged that come to his knowledge in the course of his employment, and this duty he is, in a subsequent action between his principal and a third person, conclusively presumed to have performed. This is the foundation of the rule, necessary to public safety, that notice to an agent in the course of his employment is notice to his principal.

It is contended, however, that, Pringle's membership having terminated by reason of his conviction and the forfeiture clause contained in the by-laws of the association, the clerk of the local camp was not, as to him, the agent of the head camp, and had no authority to receive dues from him after the date of his conviction. It appears, however, that the head camp had failed to furnish the clerk with the by-laws of the order adopted in 1899, or thereafter, which contained the forfeiture clause in question. So, when the deceased applied to the agent of the association to ascertain whether he could pay his dues and assessments, and keep his benefit certificate in force, it was found, on examination of the by-laws, that he could do so. Again, Pringle's conviction did not have the effect of removing the clerk of the local camp from office, and he was as much the agent of the association thereafter as he was before that event took place. He was required to collect all dues and assessments from members of the local camp and forward them to the association, and, finding nothing in the by-laws furnished him by that body which prohibited it, he decided, in good faith, that he was required to receive the

dues and assessments tendered by the deceased and his beneficiary. They were so received by him and forwarded to the head camp, which received and retained them until after Pringle's death. The clerk of the local camp was thus acting as agent for the association, with at least ostensible authority to accept the dues and assessments in question, and his acts should be held to be binding upon his principal. It also appears that the local camp received its part of the dues paid by the deceased; continued to treat him as one of its members, and has never offered to return any of the money thus received. It would, therefore, seem clear that the forfeiture relied on by the defendant has been waived, and this rule is amply sustained by the authorities.

So, we are of opinion that our former judgment was right, and it is adhered to.

REVERSED.

LETTON, J., dissenting.

Frank W. Pringle became a member of the order upon June 23, 1900. At the time he became a member he agreed "to conform in all respects to the rules, laws and usages of the society now in force or which may hereafter be enacted and adopted by the same, and that this application and the laws of this society shall form the sole basis of my admission to membership therein and of the benefit certificate to be issued me." There was a further agreement that if he should be expelled from the order he should forfeit his rights under the certificate. In his application he states: "I fully understand the object, organization, mode of action and laws of this society, and particularly that part of the laws defining the qualifications for and the restrictions upon its membership. * * * I further understand and agree that the laws of this society now in force enter into and become a part of every contract of indemnity by and between the members of the society and govern all rights thereunder." These statements were a

part of the application and were signed by the applicant, together with the further signed agreement that the application and statements should be taken as a part of the contract. At the time of his admission into the order section 326 of the by-laws provided as follows: "If any person after becoming a member of this society shall be convicted of a felony, he shall by such conviction be expelled from the society, without any action being taken by the local camp, executive counsel, head camp or any of the officers of this society." And section 328 provided: "In case of expulsion because of conviction of a felony, the member shall never again be reinstated." Section 274 provided, in substance, that the camp clerk should not knowingly receive dues "from a member who shall have been convicted of a felony after his adoption into this society, provided, however, that the receipt, retention or transmission to the head camp of such dues or assessments shall not have the effect of waiving the forfeiture of the certificate of such member or secure to him any such rights whatever." There is no evidence in the record showing that at the time Pringle became a member of the order he did not fully understand and know the contents of the by-laws and the foregoing provisions and his signed declaration is to the effect that he was so informed. In April, 1901, he was convicted of horse stealing, and died in the penitentiary in September, 1901. In July, 1901, and after the date at which the local clerk testifies Pringle and he examined the by-laws, a new by-law was adopted as section 248, revision of 1901, as follows: "No local camp nor any of the officers thereof shall have the right or power to waive any of the provisions of the by-laws of this society."

1. In the absence of any evidence to contradict Pringle's statement that he knew what the by-laws were in 1900 when he joined the order, I do not think the testimony of the clerk that, about the time of the conviction he examined his 1897 copy of the by-laws and found nothing to prevent him from accepting the dues, is of much importance. Both he and Pringle evidently had some rea-

son for looking up the by-laws in that respect. No reason
is suggested why he should think of such a law being in
existence, unless he had at some time been informed of it, ·
and I think the inference to be drawn from this fact sup-
ports the statement in Pringle's application that he knew
what the by-laws were. Pringle knew when he entered
into the contract that if he was convicted of a felony
his certificate would be void. He knew also that the clerk
had no right or authority to take money from him in pay-
ment of dues or assessments after that event. By a sub-
sequent by-law which was binding upon him, the power
of the clerk to waive any of the provisions of the contract
or waive a forfeiture was expressly taken away. The col-
lection of the assessments by the local clerk therefore was
beyond the scope of his authority, which was known to the
insured, and which, in the absence of ratification by his
principal, did not bind it. If the evidence preponderated
that the head camp knew of the forfeiture and accepted
the money with that knowledge, I would concur in the
opinion, but I do not so read the record. This was the con-
dition in *Supreme Tent, K. M. W. v. Volkert,* 25 Ind. App.
627, referred to in the opinion, and with this doctrine I
have no quarrel. There is no evidence of ratification of
the unauthorized act. The money sent in by the clerk
was returned immediately upon knowledge of the facts,
and the forfeiture was never waived. These views are
supported by *Farmers & Merchants Ins. Co. v. Bodge,* 78
Neb. ——; *Graves v. Modern Woodmen of America,* 85
Minn. 396; *Field v. National Council, K. L. S.,* 64 Neb. 226;
*Royal Highlanders v. Scovill,* 66 Neb. 213; *Elder v. Grand
Lodge, A. O. U. W.,* 79 Minn. 468; *Knights of Honor v.
Oeters,* 95 Va. 610; *Borgraefe v. Knights of Honor,* 22 Mo.
App. 127; *Harvey v. Grand Lodge, A. O. U. W.,* 50 Mo.
App. 472; *Hall v. Western Travelers Accident Ass'n,* 69
Neb. 601. I think it would be extremely dangerous to the
welfare of all the members of beneficial associations if the
power is indirectly conferred upon local clerks to change
or annul the terms of the contract, as seems to be the ef-

fect of the opinion.   We have held that this cannot be done to the detriment of the member by a body made up of the officers of the lodge and some elected representatives. *Lange v. Royal Highlanders,* 75 Neb. 196.   If this cannot be done by the formal action of such a body, is it consistent or logical to say that it may be done by any local camp clerk?   Moreover, the organization possesses social and fraternal, as well as insurance features, and its members are associated together in the work of the local camp. Most law-abiding citizens have a just and well-founded aversion to social association with criminals, and the provisions of the contract which seek to protect them from such association should be given full force and effect, and the unauthorized act of a subordinate agent should not deprive the other members of the protection proposed by this by-law.   It is probable also that by reason of an increased mortality in prisons the insurance risk is increased as long as the criminal is incarcerated, and the society has the right to protect itself and its members from such an increase of the hazard caused by the act of the insured.

The by-law is salutary, is in the interests of the whole membership of the association, and should be enforced, unless waiver by the principal is shown.