STELLA HENTON ET AL., APPELLEES, V. SOVEREIGN CAMP
WOODMEN OF THE WORLD, APPELLANT.

FILED SEPTEMBER 26, 1910. No. 16,124.

1. **Insurance:** AGENCY: EVIDENCE. Where the by-laws of a fraternal beneficiary association authorize the clerk of a local camp to collect arrearages from members who have been suspended for nonpayment of assessments, to restore their names to the membership list, and to report reinstatements to the sovereign camp, he is the agent of the association in performing those duties.

2. ———: REINSTATEMENT: ESTOPPEL. A fraternal beneficiary association may be bound by the action of a local camp clerk who collects arrearages from a member suspended for nonpayment of assessments and restores his name to the membership list without demanding or receiving a health certificate required by the by-laws, where the clerk acts with full knowledge that the member is sick at the time, and where there is no fraud on the latter's part.

3. **Appeal:** REQUEST FOR DIRECTED VERDICT: REVIEW. Where both parties, at the close of the evidence, request a peremptory instruction, and a verdict is directed in favor of plaintiff, the action of the trial court in declining to submit issues of fact to the jury presents no question for review in the appellate court.

APPEAL from the district court for Cass county: HARVEY D. TRAVIS, JUDGE. *Affirmed.*

*Arthur H. Burnett, Matthew Gering* and *A. G. Ellick,* for appellant.

*A. L. Tidd, contra.*

ROSE, J.

This is a suit on a fraternal beneficiary certificate issued May 7, 1906, by defendant to W. E. Henton, who died March 7, 1907. Plaintiffs are his widow and orphans. They were named as beneficiaries in his certificate, which, if enforceable, obligates defendant to pay them $750 and to expend $100 for a monument at assured's grave. Plaintiffs recovered judgment for the full amount of their claim, and defendant has appealed.

The Sovereign Camp of the Woodmen of the World is in Omaha. Assured was a member of the local or subordinate camp at Plattsmouth. To retain his membership and keep his insurance in force he was required to pay monthly assessments of $2.15 each. The assessment for each month was payable on or before the first day of the month following. For failure of a member to make payment within that time, a by-law provides that "he shall stand suspended, and during such suspension his beneficiary certificate shall be void." It is admitted in the answer that the insurance was in force during January, 1907, though the proofs do not show the payment of the assessments for December, 1906, and January, 1907, until the latter part of February. There is evidence to sustain a finding that those assessments were paid to the clerk of the local camp about ten days before the death of assured, and that on March 7, 1907, before his death, the February assessment was also paid to the clerk. The December and January assessments were paid by a son of assured after the latter had been suspended for nonpayment of the January assessment. Assured's brother-in-law paid the February assessment by check.

Defendant denies liability on the ground that assured, after he had been suspended, was never reinstated. This defense is based on the following propositions: Assured was presumed to know the laws of the association and the limitations they impose upon officers and members of the local camp. He had been suspended more than ten days when the January assessment was paid. Thereafter he could only be reinstated by paying all arrearages and complying with a by-law which required him to deliver to the clerk a signed statement that he was in good health. Such a certificate was never furnished. When the arrearages were paid defendant was afflicted with the malady which resulted in his death, and for that reason he could not be reinstated. The local officers had no authority to waive the health certificate or other requirements of the by-laws. The points of law involved in the position taken by de-

fendant are ably argued. It is contended that in accepting the payments, after assured had been delinquent more than ten days, the clerk of the local camp was the agent of assured. In addition to its constitution and by-laws defendant relies on the following language, which is copied from the clerk's receipt: "If any part of the above amount is paid for the purpose of reinstating the sovereign so paying, it is received upon the condition and agreement that I receive and hold the same in trust for him pending the necessary action upon his application for reinstatement, and that he has no claim upon the order until such application is accepted in accordance with the constitution and laws. If such application is not accepted, the above sum to be refunded."

The evidence tends to show these facts: Assured's suspension and reinstatement were entered on the records of the local camp and reported to the sovereign camp. Afterward the latter received and audited the payments of the December and January assessments, and no effort was made to return them until April, 1907. The delinquent payments were returned by defendant to the local clerk, but he did not tender them back to plaintiffs, and they were never refunded, though there is in the record an offer by defendant to return them. Nothing was said about the health certificate when the clerk collected the arrearages, and no request for it was ever made. Fraud on the part of assured is not shown. The clerk knew of assured's illness, and had previously reported the fact to the local camp at a regular meeting. Before the February assessment was paid inquiry was made of the clerk as to assured's standing, and he replied: "He owes one assessment and had better pay it."

Under these circumstances was the district court justified in holding that the health certificate and forfeiture were waived? Defendant's by-laws require members to pay each assessment and all arrearages, in cases of suspension and reinstatement, to the clerk of the local camp, who is required to forward the funds to the sovereign

camp. Transactions essential to the reinstating of a member who has been suspended for nonpayment of assessments must be conducted with the clerk of the local camp. The by-laws provide: "Should a suspended member pay all arrearages and dues to the clerk of his camp within ten days from the date of his suspension, and if in good health and not addicted to the excessive use of intoxicants or narcotics, he shall be restored to membership and his beneficiary certificate again become valid. After the expiration of ten days and within three months from the date of suspension of a suspended member, to reinstate he must pay to the clerk of his camp all arrearages and dues and deliver to him a written statement and warranty signed by himself and witnessed that he is in good health, and not addicted to the excessive use of intoxicants or narcotics, as a condition precedent to reinstatement, and waiving all rights thereto, if such written statement and warranty be untrue." The penalty imposed upon a clerk for reinstating a member whose health is at the time impaired is suspension from office and expulsion from the camp. It seems clear, therefore, that the clerk is the agent of defendant in receiving arrearages and in reinstating members. *Pringle v. Modern Woodmen of America,* 76 Neb. 388; *Soehner v. Grand Lodge, Order of Sons of Herman,* 74 Neb. 399. Under the facts disclosed the clerk did not divest himself of such agency by the form or terms of the receipt quoted. The effect of the clerk's agency is stated in *Pringle v. Modern Woodmen of America,* 76 Neb. 388, as follows: "In *Modern Woodmen of America v. Colman,* 68 Neb. 660, we held that a forfeiture incurred by the holder of a life insurance policy or contract is waived, if the company, with knowledge of the facts, subsequently collects premiums, dues or assessments on account of the contract, and retains them, without objection, until after the death of the insured; that it is the duty of the agent to make known to his principal all facts concerning the service in which he is engaged that come to his knowledge in the course of his employment, and this

duty he is, in a subsequent action between his principal and a third person, conclusively presumed to have performed. This is the foundation of the rule, necessary to public safety, that notice to an agent in the course of his employment is notice to his principal."

The agency of the clerk of one of defendant's local camps was considered in *Frame v. Sovereign Camp, W. O. W.,* 67 Mo. App. 127. The report of the case shows that a member in arrears took sick Sunday, and died Wednesday, following. A relative went to the clerk of the local camp Sunday, reported the sickness, paid the delinquent assessments, and obtained a certificate of reinstatement. The language of the court follows: "The result of our views on this branch of the case is this: That if the clerk of the local camp, with knowledge of the condition of the delinquent and suspended member, receives his dues and reinstates him in the fraternity, it is, in the absence of fraud or collusion, binding on the order; and that such order cannot after such action, if it turns out that the delinquent afterward dies of the sickness with which he was known to be afflicted when reinstated, repudiate the action of its constituted agent. The matter of accepting arrearages and reinstating members was intrusted to the clerk, and his action on such matter, when taken in good faith, binds his principal, as in other cases of principal and agent." This is in harmony with the views expressed in *Pringle v. Modern Woodmen of America,* 76 Neb. 388. Adherence to the principle announced in the case last cited requires the approval of the finding in favor of plaintiffs in the present case.

At the close of the evidence both parties requested a peremptory instruction, and a verdict was directed in favor of plaintiffs. It follows that the action of the trial court in declining to submit issues of fact to the jury presents no question to this court for review, though assailed as erroneous. *Dorsey v. Wellman,* 85 Neb. 262; *Segear v. Westcott,* 83 Neb. 515.

No error has been found in the record, and the judg-ment is

AFFIRMED.

ROOT, J., not sitting.