EMMA KRECEK, APPELLEE, v. SUPREME LODGE OF FRATERNAL UNION OF AMERICA, APPELLANT.

FILED FEBRUARY 27, 1914. No. 18,158.

1. **Appeal**: MOTION FOR DIRECTED VERDICT: FINDING. Where, at the close of the trial of a law action, each party moves for a directed verdict, the finding of the court takes the place of a verdict by the jury and will be so treated on appeal.

2. **Insurance**: BENEFICIAL ASSOCIATION· DUES: NOTICE TO AGENT. The secretary of a subordinate lodge of a fraternal beneficiary association, who receives the payment of dues from the members and forwards same to the company, is considered the agent of the company for that purpose, and the company will, ordinarily, be presumed to have knowledge of all facts known to such secretary in regard to the standing of members whose dues he so receives and forwards.

3. ——: ——: ——: ——. But, when the applicant for membership conspires with the secretary and others of the subordinate lodge to deceive the company and to withhold from it knowledge of facts disqualifying the applicant for membership, the presumption of knowledge of such facts on the part of the company is overcome.

4. ——: ——: MEMBERSHIP: PROHIBITED OCCUPATIONS: FRAUD. Where the membership of a fraternal beneficiary association have determined as a mutual organization, and so declared in the constitution of the society, that persons engaged in a particular occupation shall be ineligible to membership, on any terms, the power to admit a person engaged in such prohibited occupation to membership, or to ratify such membership when illegally gained, does not exist in either the supreme officers of the society or in any local lodge thereof.

5. ——: ——: ——: ——: ——: ESTOPPEL. And in such a case the payment by one so admitted, of dues and assessments

to a local lodge of the society, cannot have the effect of validating his membership; nor will it estop the company from denying liability after his death, whether the officers of the local lodge, at the time of receiving such dues and assessments, had or had not knowledge of the fraud practiced by him in gaining and retaining such membership.

APPEAL from the district court for Douglas county: WILLIS G. SEARS, JUDGE. Reversed with directions.

Edward L. Bradley, Allen & Webster. and H. H. Bowes, for appellant.

A. H. Murdock, contra.

FAWCETT, J.

Plaintiff was beneficiary in a membership certificate issued by defendant on the life of her husband. After his death she brought this action in the district court for Douglas county, and from a judgment in her favor for the amount of such certificate defendant appeals.

At the close of the trial each party moved for a directed verdict. Under such circumstances the finding of the court takes the place of a verdict of the jury, and should not be set aside unless upon the whole record it appears to be clearly wrong.

The principal contention of the defendant is that decedent was not eligible to membership, and that his membership certificate was procured by fraud and is therefore void. Under the constitution and rules of the order a saloon-keeper or bartender was not eligible to membership. In the application the decedent stated that his occupation was a "can maker." The evidence is clear that this answer was knowingly and wilfully false, and that at the time of giving this answer and signing the application the applicant was a saloon-keeper, or a bartender in a saloon. In stating his occupation, in his medical examination, there is written "sal." These letters were crossed out and the words "can maker" written in. A sister of the decedent was at the time secretary of the local

lodge. She testified that she noticed the change in occupation in the medical examiner's certificate, and shows that she understood why the change was made. She was asked: "Q. You knew when you read that, knowing that he was a bartender, that somebody had started to write 'saloon' and had crossed it out? A. I saw they started to write something; I don't know what, doctor started to do that; I didn't, haven't I been telling you that I knew the business he was in? I didn't notice particularly what they started to write in, saloon or saloon-keeper, I expected the doctor made a mistake, he knew him well, and was going to tell the truth; I expected he started to write something else; I knew it would not do to tell that." She also testified that after her brother's death she had a conversation with Mr. Bradley (one of the attorneys for defendant), "in which he asked me whether or not my brother, the deceased James Krecek, had been engaged as a bartender prior to the time that he joined the defendant order, and in which I told him that he hadn't been a bartender and had never been anything, but was a can maker until after he joined the order. My purpose was to conceal the real facts." In the light of this testimony, showing the part taken by decedent's sister, who was secretary of the local lodge and the one who forwarded the application to the supreme officers, and considering the fact that, as she says, the doctor knew the decedent well, "and was going to tell the truth" until he was stopped either by the decedent or his sister, secretary of the lodge, the fraud attempted to be perpetrated upon the society is most glaring.

It is too evident for serious thought to the contrary that the examining physician started to give decendent's true occupation of saloon-keeper; that after writing the first three letters it either dawned upon him or was suggested by the applicant that if that occupation were given he could not be admitted as a member of the order, and so the change was made. It is claimed that the medical examiner was the agent of the supreme lodge. This contention is not sound. He was not appointed examiner by the supreme lodge, but was selected by the local lodge, of which

applicant's sister was secretary.  He was not even a bene-
ficial member of the order, but had been admitted simply
as a "social" member, evidently, as stated by counsel for
defendant, for the purpose of securing the business of the
local lodge.  The sister of decedent did not continue in the
office of secretary of the local lodge until the time of Kre-
cek's death, and the secretary who succeeded her prob-
ably did not know that he was engaged in a prohibited oc-
cupation.  His assessments were regularly paid into the
local lodge for several years thereafter, and forwarded to
the supreme lodge.  There is no evidence to show that dur-
ing any of the time that Krecek held his certificate of
membership in the society any officer of the supreme
lodge had the slightest knowledge or notice of the fact that
Krecek was engaged in an occupation prohibited by the
constitution of the order.  Under the circumstances it
would be a travesty upon justice to compel the members
of the order generally to be assessed to pay the death
claim on a membership gained through such fraud and
deceit.  The fact that some of the members of the local
lodge knew of his occupation does not change the matter.
They were not the persons charged with any official duty
in relation thereto.

The language of Barnes, J., in *Wilhelm v. Order of
Columbian Knights,* 149 Wis. 585, 588, is very appropriate
to this case:  "We have here a case where the agent of the
defendant, and the insured and the beneficiary, his wife,
entered into a conspiracy to defraud the defendant by se-
curing a policy of insurance by means of false representa-
tions, a policy which they knew could not be obtained if
the truth were disclosed.  If we were without precedent
for our guidance, we would have little inclination to make
the court the fourth member of that conspiracy by assist-
ing in the consummation of the fraud, but we are not.
This case comes squarely within the decision in *Hanf v.
Northwestern Masonic Aid Ass'n,* 76 Wis. 450, and it
would be superfluous to say anything more about this
branch of it."  If we were to substitute the doctor and de-
cedent's sister for the beneficiary in the case at bar, we

would have an exact parallel with the Wisconsin case. The fact that the wife of decedent is not shown to have participated in the fraud by which he obtained his certificate of membership is immaterial. Whether she then participated in the fraud or not, she is now attempting to avail herself of the benefits of that fraud. All of the parties who participated in the fraud were responsible for its results, and certainly neither the insured nor any one claiming under him should be allowed to say that the defendant must be presumed to know the facts which they had succeeded in keeping from the knowledge of its supreme officers, and that defendant has waived the objection to his occupation because of a constructive knowledge of facts which by the very conduct of the conspirators it was prevented from actually acquiring.

But, it is said that for about ten years after the decedent's sister ceased to be secretary of the local lodge Krecek regularly paid his assessments, which were received and forwarded to defendant; that during that time there were various secretaries and other officers of the local lodge who did not participate in the fraud, but who knew of the disqualification of the insured, and who received the money from time to time and forwarded it; and that, under numerous decisions of this court, defendant cannot now assert the fraud practiced upon it in gaining admission to membership as a defense to this action. But none of the authorities cited sustains such a contention. They are all cases where, at the time of becoming a member, the applicant was eligible to membership, but by reason of some act of his after gaining admission his right to remain a member became forfeited; as in *Modern Woodmen of America v. Colman,* 64 Neb. 162, and, on rehearing, 68 Neb. 660; also, *Pringle v. Modern Woodmen of America,* 76 Neb. 384, and, on rehearing, 388. In those cases it is held that a subordinate lodge of a mutual benefit society and its clerk or secretary, who is designated by the supreme lodge to receive and forward dues and assessments, are agents of the supreme lodge, and that the collection of dues and assessments from a member of the order by

the clerk of the subordinate lodge, with full knowledge of any forfeiture of the member's right to continue his membership, amounts to a waiver of the forfeiture. We have no disposition to recede from the rule announced in those cases, but they rest upon a radically different foundation from the case at bar. In the case we are considering, Krecek could not, under the constitution of the society, become a member of the order. The membership of this society having determined as a mutual organization, and so declared in the constitution of the society, that saloon-keepers and bartenders are ineligible to membership, on any terms, the power to admit them to membership, or to ratify their membership when illegally admitted, did not exist in either the supreme officers of the society or in any local lodge thereof. It follows, therefore, that the local lodge could not admit the decedent to membership, nor could the supreme officers of the society ratify its act in so doing, nor could they continue him in membership, for the reason that any attempt to do so was prohibited by the constitution, over which they had no control, and not by any mere by-law which they had enacted. When the constitution of one of these societies provides in unmistakable terms that a person engaged in a certain business *cannot* become a member of the society, and that if, after becoming a member, he enters upon such prohibited occupation, the doing so "shall *ipso facto* forfeit all rights as a member of this order," and that his certificate shall thereby become absolutely null and void without any action on the part of his local or supreme lodge, and that the payment by him of any dues and assessments thereafter shall not have the effect of waiving such forfeiture or reinstating such certificate-holder to any rights, benefits or privileges as a member, the society cannot be made liable by estoppel or waiver, for the reason that he could not be admitted to membership, or permitted to remain a member, by the most solemn affirmative action on the part of either the supreme officers or the local lodge of the society. The rule is well settled that no

95 Neb. 28

one can gain anything by estoppel or waiver that he could not have gained by affirmative action or contract.

The defendant by its answer concedes the right of the plaintiff to recover the amount of the assessments paid into the society by the decedent during his lifetime. These amounts, together with interest, are all that plaintiff is entitled to recover. The judgment of the district court is therefore reversed and the cause remanded, with directions to ascertain the amounts paid in by the decedent in his lifetime as assessments upon his certificate of membership, and to render judgment therefor in favor of plaintiff, together with interest on the sums so paid, from the dates when such payments were made to the time of the original trial of this action in that court, defendant to recover its costs since the filing of its answer in the court below.

                                                        REVERSED.

SEDGWICK, J., dissenting.

I cannot concur in the opinion of the majority in this case, because it is not in harmony with the former decisions of this court, and makes the rights of the beneficiaries and policy-holders in these fraternal benevolent associations absolutely uncertain in a most important and vital matter. The majority opinion says: "When the constitution of one of those societies provides in unmistakable terms that a person engaged in a certain business *cannot* become a member of the society, and that if, after becoming a member, he enters upon such prohibited occupation, the doing so 'shall *ipso facto* forfeit all rights as a member of this order,' and that his certificate shall thereby become absolutely null and void without any action on the part of his local or supreme lodge, and that the payment by him of any dues and assessments thereafter shall not have the effect of waiving such forfeiture or reinstating such certificate-holder to any rights, benefits or privileges as a member, the society cannot be made liable by estoppel or waiver, for the reason that he could not be admitted to membership, or permitted to remain a member, by the most solemn affirmative action on the part of either the

supreme officers or the local lodge of the society." The provision of the constitution that "if, after becoming a member, he enters upon such prohibited occupation, the doing so 'shall *ipso facto* forfeit all rights as a member of this order,' and that his certificate shall thereby become absolutely null and void without any action on the part of his local or supreme lodge," is, of course, rightly considered by the majority as effectual to terminate the membership of the insured and cancel his rights as such member, as much so as the "prohibited occupation" would be effectual to prevent his "becoming a member." It makes no difference when he enters upon the prohibited occupation. If he does so before he applies for membership, he cannot become a member. If he does so after becoming a member, his membership *ipso facto* ceases.

In this case, a very few months after Mr. Krecek had been admitted to membership in the local lodge through the fraudulent conduct of the officers of that lodge, those officers who participated in that fraud ceased to hold their official positions, and other members of the lodge who had nothing to do with assisting Krecek to become a member became the officers of the lodge. For the 10 years following, the officers of the lodge were disinterested, and were, so far as this evidence shows, constantly endeavoring to do their duty as such officers. They received the dues from Mr. Krecek regularly and remitted them to the supreme lodge, and so, if we say that the admission of Mr. Krecek into the lodge was in its inception fraudulent, the question is as to the right of the association to receive his dues, recognizing him as a full member of the lodge for 10 successive years, knowing his occupation, and then upon his death refuse further to recognize his beneficiary. During these 10 years he was following the prohibited occupation. Such conduct on his part *ipso facto* forfeited his rights under his contract. The majority opinion says that he could not be "permitted to remain a member, by the most solemn affirmative action on the part of either the supreme officers or the local lodge of the society." This is in direct conflict with the holding in *Pringle v.*

*Modern Woodmen of America,* 76 Neb. 384, and, upon rehearing, 388. Pringle's certificate of membership contained the provision "that it shall become null and void if, while such a member, he shall become convicted of a felony." This statement in the opinion is a brief summary of the effect of the clause in the constitution and certificate, which were substantially the same as the provision of the constitution and certificate in the case at bar. Mr. Pringle was convicted of a felony. After he was arrested for the offense, and before the trial, "he deposited with the clerk of the local camp a sum of money sufficient to pay his dues and assessments, thereafter to accrue, for the term of four months and directed the clerk so to apply it as such obligations should mature. This direction the clerk obeyed by remitting the required sums monthly to the head camp; such remittances being made all, or nearly all, of them after the conviction and with the knowledge by the clerk of that fact." About six months afterwards Mr. Pringle died in the penitentiary. If anything could forfeit the rights of membership in these associations, it would seem that to commit a felony and suffer conviction and imprisonment for the crime would forfeit such rights, and that his certificate would "thereby become absolutely null and void without any action on the part of his local or supreme lodge." But this court held that the deposit of the dues with the clerk of the subordinate lodge and paying those dues to the supreme lodge by the clerk, while the insured was being prosecuted for felony and was suffering imprisonment therefor, was a waiver of the forfeiture, and the beneficiary was allowed to recover. After Mr. Pringle's death "an officer or agent of the head camp made or attempted to make a tender to the plaintiff of the sums accepted as dues and assessments after the date of conviction," and the court said: "In our view of the matter the fact is not material." The court also quoted from *Modern Woodmen of America v. Colman,* 64 Neb. 162: "It is a settled law of this state that if a beneficiary insurance association, like the plaintiff in error in this action, continues to collect dues and mortuary assessments

from a member who has forfeited his beneficiary certificate, after knowledge of such forfeiture by its officers or agents intrusted with the duty of making assessments, it shall be held to have waived such forfeiture, without regard to any restrictions or limitations incorporated in its certificates of membership or by-laws with respect to the power or authority of such persons to make such waivers." To be convicted and imprisoned for felony cannot be regarded as a less serious ground for forfeiture than to be the keeper of a saloon. At all events, the keeper of a saloon was not so seriously regarded by the lodge of which Mr. Krecek was a member, the members of which were natives of Bohemia, and were familiar with saloons and saloon-keepers, and regarded them quite favorably as the officers of the supreme lodge well knew. Notwithstanding the majority opinion emphatically states that "if, after becoming a member, he enters upon such prohibited occupation, the doing so 'shall *ipso facto* forfeit all rights as a member of this order,' and that his certificate shall thereby become absolutely null and void without any action on the part of his local or supreme lodge," it does not admit that it is overruling *Pringle v. Modern Woodmen of America, supra,* but says, "We have no disposition to recede from the rule announced in those cases," thereby, as it seems to me, making it impossible to foretell what the decision of this court will be in subsequent cases.

The object is to prevent convicts and saloon-keepers from being members, because the risk is supposed to be greater, and the limitation expressly applies alike to those who are trying to get in and to those who are trying to remain in. A saloon-keeper or convict cannot become a member. If a member becomes a convict or saloon-keeper, his membership *"ipso facto"* ceases. Our former decisions are that knowledge on the part of the local officers, who receive and forward dues, that the applicant is, or that the member has become, a saloon-keeper or convict is through such local officers notice to the supreme officers, and through the supreme officers notice to all whom they

represent and for whom they act. And to receive dues implies an agreement on the part of all these to waive the objection or forfeiture, and that if the local officers, the supreme officers and the policy-holders agree to waive the objection or forfeiture, and receive money on that agreement, the waiver is valid and the beneficiary can recover. This holding is now reversed without conceding that the law is changed, but with a solemn statement that we adhere to our former decisions. The attempted distinction that the disqualification of a convict or saloon-keeper to become a member cannot be waived, while the disqualification to remain a member can be waived, is a distinction without a difference, and cannot be relied upon by intelligent business men, and is so clearly without any basis in these contracts of membership that the profession will not be justified in relying upon it as settled law of this state in advising their clients in the adjustment of their claims.

I am not now attempting to discuss the question whether it would be more reasonable and logical to hold that such forfeitures cannot be waived than to hold that they can be so waived. Undoubtedly substantial reasons can be urged for either position. Until the present case, the theory has been that public policy favored the view that they can be waived. The constitutions and by-laws of such associations are generally quite formidable documents, and, together with the certificate of membership, contain a multitude of provisions and requirements that are well understood by the promoters of the association and its supreme officers, but not always fully comprehended by those who accept such insurance and pay the dues. The dues paid by the insured benefit all policy-holders, and the policy-holders select the supreme officers to represent and act for them. It is conceded that the supreme officers are bound by notice to the local officers who receive and forward the money paid by the certificate holder. The majority opinion says that notice to the local officers is notice to the supreme officers who receive the money from them, and there is some reason to conclude that the general policy-holders, who benefit by the receipt ·

of these dues, should be held responsible for the acts of
the supreme officers whom they choose to conduct their
business for them. Notice to the local officers who remit
this money being notice to the supreme officers who receive
it, there is some reason for holding that notice to these
supreme officers is notice to the other policy-holders who
selected them and for whom they act, and that the waiver
of forfeiture by these supreme officers is waiver by their
superiors, the general policy-holders.

On the other hand, it may well be suggested that, the
association being mutual, and each policy-holder being in
a sense a partner with all others, their solemn agree-
ment among themselves that they shall not be liable to
contribute to the beneficiary of a convict in the peniten-
tiary or the keeper of a public saloon should be respected,
and ought not to be considered waived by receiving and
appropriating dues paid by the insured, when their con-
tract expressly provides that the receipt of such dues shall
not constitute such waiver.

But there should be certainty in the law, and one posi-
tion or the other should be adopted and adhered to, so that
all parties may know, or be advised, as to their rights.
The law, which heretofore was supposed to be definite, is
now most unfortunately rendered wholly uncertain.

LETTON, J. I think the opinion inconsistent with cases
cited in Judge Sedgwick's dissenting opinion.