SUSAN J. O'CONNOR, Appellee, v. KNIGHTS AND LADIES OF SECURITY, Appellant.

INSURANCE:   Life Insurance—Automatic Suspension—Waiver.   A
1    provision in a policy of life insurance automatically suspending the policy for the nonpayment of dues or assessments by a stated time, is, in the absence of fraud, waived by the unconditional receipt and retention of such payments by the company, after the time stipulated, with knowledge, express or implied, that the policyholder was, in good faith, making such payment for the sole purpose of preserving the life of his policy.

PRINCIPLE APPLIED:   A fraternal beneficiary certificate of insurance provided that failure to pay assessments and dues on or before the last of each month *ipso facto* suspended the insured and terminated the insurance. The insured, on February 16th, when he was in good health, drew and forwarded his check in payment of his February assessment. For some reason ·not disclosed, the check did not reach the local lodge officials until March 5th. In the meantime, and on February 22d, the insured was taken sick. The payment received on March 5th was accepted by the lodge officials, and they sent the insured a receipt *for the February dues* and, by an endorsement on the receipt, directed him *where to send assessments.* The said officials did not then know that the insured was ill, but made no inquiries of any kind. The March and April assessments were paid strictly on time, and were accepted unconditionally. No fraud was practiced by the insured. Insured died in April, following, of the sickness contracted on February 22d.

*Held*, there was a double waiver of the right to forfeit the policy, (1) by the unconditional acceptance and retention of the payment received on March 5th, and (2) by the like subsequent acceptance and retention of the payments for March and April.

**CONTRACTS: Forfeiture—Waiver.** A provision for the forfeiture 2 of all rights under a contract, made for the distinct benefit of one of the parties thereto, may be waived by such party, even though he has carefully stipulated against such waiver. So held as to a provision automatically suspending a life insurance policy for the nonpayment of dues and assessments within a stipulated time.

**INSURANCE: Life Insurance—Automatic Suspension—Avoidance** 3 **of Waiver.** The waiver of forfeiture by the conduct of an insurance company in unconditionally receiving and retaining payments of assessments and dues, which were made after the time specifically required by the policy, without fraud on the part of the insured, is not obviated by the fact that the company, when it received the payment, *did not know that the insured was in ill health*.

PRINCIPLE APPLIED: See No. 1.

**INSURANCE: Life Insurance—Forfeiture—Waiver of Former For-** 4 **feiture.** An unconditional acceptance of an assessment on a policy of insurance waives all former known grounds of forfeiture.

PRINCIPLE APPLIED: See No. 1.

**PRINCIPAL AND AGENT: The Relation—Stipulation Against Fact** 5 **—Insurance.** It is futile to attempt to stipulate that a certain person is not the agent of another, *when in truth and fact he is such agent*. So held where a policy of insurance provided, in effect, that the officers of the local lodge should not be considered the agents of the parent lodge.

*Appeal from Chickasaw District Court.*—W. J. SPRINGER, Judge.

THURSDAY, JUNE 29, 1916.

REHEARING DENIED FRIDAY, NOVEMBER 17, 1916

ACTION to recover amount alleged to be due on a benefit certificate issued on the life of plaintiff's husband. Judgment for the plaintiff in the court below. Defendant appeals. —*Affirmed*.

*M. E. Geiser,* for appellant.

*Smith & O'Connor,* for appellee.

Gaynor, J.—This action is brought to recover an amount alleged to be due on a certificate of insurance issued by the defendant company to Victor E. O'Connor, in the amount of $1,000. This certificate was issued on the 21st day of October, 1913, and the plaintiff was named as beneficiary. The assured, Victor E. O'Connor, died on the 2d day of April, 1914, within six months from the issuance of the certificate. The certificate provided that, if the assured died within six months from the issuing of the policy, the beneficiary should be entitled to receive but 60 per cent of the total amount named in the policy. It is admitted that due proofs of death were filed, as required by the certificate and laws of the company. The national executive committee of the appellant company passed upon plaintiff's claim and rejected the same. The assured paid all the assessments required by the certificate and the laws of the society, up to the time of his death.

The defense is based on the claim that the February, 1914, assessment and dues were not paid during the month of February; that the same were not paid to the local council until the 5th day of March, 1914; that he was, at the time of and prior to the time of payment, in ill health and dangerously sick, and that this fact was not known to the insurer at the time the February assessment was paid and received. This defense is based on the constitution and by-laws of the society, which provide, in substance, and so far as material to this controversy, as follows:

"On or before the last day of each month, the member shall without notice, pay the sum of one assessment and the local dues to the financier of the local council. The financier of each subordinate council shall keep a book, wherein all regular and special assessments and dues received from each member holding a valid certificate shall be credited. Such

entries shall be made, showing the date when actually received by the financier. All assessments for every month shall become due and payable on the *first day of the month.* The certificate of each member who has not paid such assessment or assessments and dues *on or before the last day of the month* shall, by the fact of such nonpayment, stand suspended without notice, and no act on the part of the council or any officer thereof, or of the national council, shall be required as essential to such suspension, and all rights under said certificate shall be forfeited."

The constitution and by-laws further provide:

"No right under such certificate shall be *restored* until it has been duly reinstated by the member complying with the laws of the order with reference to reinstatement." It further provides:

"Each member who has been *suspended for nonpayment* of dues, or nonpayment of an assessment or assessments, shall only be *reinstated* in accordance with the constitution and laws of the order."

Under the heading, "How a Member May Be Reinstated Within Sixty Days," we find the following:

"Any beneficiary member suspended by reason of nonpayment of an assessment or assessments, or dues, may, within sixty days from the date of such suspension, be reinstated upon the following conditions, and none other: . . . by payment, within sixty days from date of suspension, of all arrearages of every kind, including assessments and dues, for which he would have been liable had he remained in good standing; provided, however, that he be in good health at the time of making payment to the financier with a view to reinstatement. The *payment* of any such assessments and dues for *reinstatement* shall be a warranty by such member that he is in good health at the time of such payment. Provided, further, that the receipt and retention of such assessments and dues, in case the suspended member is not in good health, . . . shall not have the effect of reinstating said

member, or of entitling him or his beneficiaries to any rights under his benefit certificate.''

The laws further provide:

''The national council shall not be bound by the acceptance of arrears of assessments and dues from suspended members who are not entitled to reinstatement in accordance with the laws of the order. The receiving of such arrears and receipting therefor by any officer of a subordinate council, . . . or by any other person, or the payment by or on behalf of any suspended member, or arrears of assessments and dues with a view of reinstatement, except as provided for in the laws of the order, shall not be binding on the national council. The failure of any financier to report to the national council, as suspended, any suspended member of his council, shall not operate in any case as a waiver of the forfeiture occurring on account of the suspension.''

The laws further provide:

''The retention by the financier, or by the order, of assessments and dues paid by members or for them, with a view to reinstatement, other than as provided in the laws of the order, either before or after death, shall not constitute a waiver of any provisions of these laws until a demand has been duly made for their return by such member or his beneficiary or legal representative.''

It is further provided:

''The national council is not bound by knowledge of or notice to officers or members of local councils. No officer of this society, nor any local council officer, or member thereof, is authorized or permitted to waive any of the provisions of the by-laws of this society which relate to the contract between the member and the society. . . . Neither shall any knowledge or information obtained by, or notice to, any subordinate council or officer or member thereof, . . . be held or construed to be the knowledge or notice to the national council or the officers thereof, until after said information or

notice be given in writing to the national secretary of the order.''

. There is a further provision that the local council and its officers are the agents of the members in making applica-tion for membership, admission of members, reinstatement of members, and the collection and transmission of all assess-ments to the national council; and that the national council shall not be liable for any neglect in any of these members, nor be bound by any irregularity, neglect, or illegal action by a subordinate council or by any of its officers.

It is the contention of the defendant that, under these by-laws, Victor E. O'Connor became suspended from the de-fendant society on the first day of March, and was not a mem-ber of the society at the time of his death; that, in September, 1914, it tendered back to the representatives of Victor E. O'Connor and the plaintiff all assessments and dues received by it or its local council from said Victor E. O'Connor, from and after the date of his suspension aforesaid, to wit, March 1, 1914, which it refused to accept, and that it is now ready and willing to return said dues.

Briefly stated, defendant's contention is this:   That the February, 1914, assessment was due by the terms of the con-stitution and by-laws of the order, which were a part of the contract, on the first day of February; that a failure to pay this assessment during the month of February, on or before the last day, worked a forfeiture of the certificate and all rights under the certificate.   Reliance is had upon the pro-vision reading as follows:

''All payments shall be due and payable on the first day of the month.   On or before the last day of each month, the member shall, without notice, pay the monthly assessment and the local dues to the financier of the local council.   The cer-tificate of each member who has not paid such assessment or assessments and dues, on or before the last day of the month, shall, by the act of such nonpayment, stand sus-pended without notice.   No act on the part of the council or

any officer thereof shall be required as essential to such suspension, and all rights under said certificate shall be forfeited."

The assessment for the month of February was not paid on the last day of the month—was not paid until the fifth day of March following. It is, therefore, claimed that, under these provisions, which were a part of the contract, the assured became, by reason of the failure to pay within the month of February, suspended, and all rights under his certificate forfeited, and that the plaintiff, therefore, has no claim against this defendant upon the certificate. It must be conceded, and is conceded for the purposes of this case, that the insured, upon becoming a member of this order, was bound to take notice of its by-laws; that these by-laws entered into and became a part of the contract, the same as if they were written in the contract itself. The contract so provides, and proof of a failure on the part of the assured to comply with these provisions of the contract would work a forfeiture of his certificate and all rights under the certificate, and would be a complete defense to plaintiff's claim to recover upon the certificate, if nothing further appears. The plaintiff, however, claims that the defendant company, with knowledge of the fact that the assessment and dues for the month of February were unpaid, accepted payment thereof on the 5th day of March, and issued to the assured a receipt in the following words: "No. ...... $2.50.   Knights and Ladies of Security.   Waterloo Council, No. 1051.   Located at Waterloo, State of Iowa.   March 5, 1914.   Received of Victor E. O'Connor Two and fifty one-hundredths Dollars, payment for Month of February, 1914.   (Signed) John C. Kascht;" with the following words endorsed on the receipt: "Please send your remittance to J. C. Kascht, 229 East 4th St., after this;" that the company not only received and accepted the amount so remitted as payment of the dues for February, but has ever since retained the same; that thereafter, on the 28th day of March, 1914, assured paid the dues and assess-

ments for the month of March, 1914, and that the defendant, with knowledge of the fact that the February dues had not been paid within the time provided by the laws of the order, accepted this March payment without objection, and issued a receipt in the following words:

"March 28, 1914. Received of Mr. and Mrs. Victor E. O'Connor Five and thirty-five one-hundredths dollars, payment for the month of March, 1914."

That thereafter, the assured paid the dues and assessments for the month of April, 1914, and the same were received by the company, with knowledge of the fact that the February assessment had not been paid strictly within the time required by the laws of the order, and the company has retained the said payment, and, upon receipt of the payment, issued to the assured the following receipt:

"April 6, 1914. Received of Victor E. O'Connor, Two and fifty one-hundredths dollars, payment for the month of April, 1914."

That the defendant still holds and retains the payments made for the month of February aforesaid, and March and April; that the defendant accepted said payments with knowledge of all the facts then existing which could, under the laws of the order, constitute a forfeiture of the membership of Victor E. O'Connor; that, by reason of the facts herein stated, the defendant is now estopped from claiming any forfeiture by reason of the delay in making the February payment; that the assured made the subsequent payments, relying upon the conduct of the defendant in accepting and retaining the payment made for the February assessment.

It will be noted that the defendant company seeks to avoid payment on this certificate, not alone on the ground that the assured was dangerously sick at the time the February payment was received, but because the 1. INSURANCE: life insurance: automatic suspension: waiver. payment was not made within the month of February, as required by the by-laws. The fact that the February assessment was not paid within the

time required by the by-laws was known to the defendant company at the time it received and receipted for the payment, and directed, on the receipt, where future payments should be remitted. If this payment was made in time—if it had been made during the month of February, the fact that the assured was dangerously ill at the time of the making of the payment would be no ground for forfeiture of the policy. The only tenable ground for forfeiture is the ground laid in the constitution and by-laws, to wit, a failure to make the payment promptly within the time prescribed by the by-laws. It is the failure to make the payment within the time that, by the terms of the by-laws, forfeits all rights under the policy and suspends the member.

We will concede that this required no affirmative action on the part of the company; that a failure to pay, in and of itself, suspended the member and forfeited all rights under the certificate. This provision of the policy is made, not for the benefit of the assured, but for the benefit of the company. It is a provision in the policy, therefore, which the company itself might waive, or, by its subsequent conduct, be estopped from insisting upon as against the insured, as we will endeavor to show hereafter more fully by the authorities bearing upon this point.

2. CONTRACTS:
forfeiture:
waiver.

This controversy, therefore, turns upon this question: Did the company so conduct itself, after it knew the forfeiture had taken place by the terms of its contract, that it is now estopped to insist upon such forfeiture, as against the plaintiff? Did it, by its subsequent conduct, waive, as between itself and the insured, a strict enforcement of these provisions of its contract as to forfeiture, against the insured?

The record discloses that, at the time this payment was received and accepted, on the 5th of March, no inquiry was made touching the then health of the insured, nor was it accepted subject to any showing as to the health of the insured at that time; and this is true of the subsequent pay-

ments made and received and accepted by the company.
Though the fact is that the assured was ill at the time this
February payment was received by the company, and con-
ceding that, if this had been known to the company at the
time it received it, it might have rejected the payment and
insisted upon the forfeiture, yet we are not prepared to say
from this record, as will hereafter more fully appear, that
the assured practiced any fraud, or purposely concealed the
fact of his condition from the company at the time.  When
this payment was made, on the 5th day of March, the company
knew, or had reason to believe, we think, that the payment
was not made for the purpose of reinstatement, but was made
for the purpose, on the part of the assured, and with the
intent, to comply strictly with the requirements of his con-
tract, and pay, not for reinstatement, but for the purpose of
complying with his contract.

The record discloses that the check for the February
assessment was received by the president of the local council
on the 5th day of March; that it came to him in an envelope
properly addressed, and, presumably, properly stamped by
the post-office authorities.  The envelope is not before us, nor
is its absence accounted for.  Upon the receipt of this letter
containing the check, the president of the company carried it
to the financier and delivered it to him, and it was duly re-
corded upon the books of the company as a payment of dues
for the month of February.  This check was dated the 16th
day of February, 1914, showing an intent on the part of
the insured to pay his February assessment at that time.
The date of this check was unquestionably known to the presi-
dent of the local council and to the financier when they
received it, cashed it, credited plaintiff on the book as for the
month of February, and sent the receipt hereinbefore set out.
They were then charged with notice, from the date of the
check, that the purpose of the payment was not for reinstate-
ment, but for the purpose of complying strictly with the
requirements of his contract, and making the payment within

the month of February.  Why it was not received earlier than
the 5th day of March does not appear.  Some light might
have been given us upon this question had the envelope in
which the check was received been produced upon the trial.
It seems that the company had been changing its financiers
about that time.  The remittances were made, as a rule, to the
financier.  This check seems to have been mailed to the presi-
dent of the local council and received by him.  The president
and the financier, in receiving this check, crediting the amount
on the book and receipting for it, treated it, not as for the
purpose of reinstatement, but as made and received for the
purposes of payment of the February dues.  No notice was
ever given the assured that his check was received too late,
under the rules of the order, neither when this was received
and credited nor when the other subsequent payments were
credited and receipted for.  If the contention of the defendant
is now to be sustained, the assured forfeited all his rights
under the certificate on the first of March.

It is claimed that the assured knew that, if his payments
were not made during the month, he was automatically sus-
pended, and all rights under the certificate forfeited, and we
may concede this.  The defendant also knew, when it received
this check, if its contention is now true, that a strict applica-
tion of the contract and by-laws to the defendant's claim did
automatically suspend the plaintiff and forfeit all his rights
under the certificate.

These laws were made not only for the government of the
assured, but also for the government of the insurer.  They
were made especially for the benefit of the insurer, and could
be insisted on or waived by it.  It chose not to insist upon
the forfeiture, but to accept the payment, not for the purpose
of reinstatement, but for the purpose of discharging the
original obligation under the contract to pay within the
month of February.  All its conduct discloses this purpose
and intent on its part, not only its conduct at the time
of the receipt, but its subsequent conduct touching subsequent

payments. The record further discloses that, on the 16th day of February, at the time this check was prepared and signed, the assured was in good health; that he was not taken ill until the 22d day of February; that he was then taken suddenly ill with some acute trouble that required an operation, from the effect of which he died. There is no evidence that the assured knew that his check had not been received within the month of February. True, the receipt was dated on the 5th day of March, but it recited that the payment was made and received for the month of February, 1914. There was nothing to indicate to the assured, other than the date of this receipt, when this check was actually received by the company. Therefore, no fraud or wilful concealment can be charged to the assured. His check was dated February 16th, in time to meet the requirements of the contract. It was forwarded to the society. Why it was not received earlier does not appear. When the society received it and receipted for it as a payment under the contract for the month of February, he had a right to assume that it was received and accepted as a payment made in time for the February dues, and that his contract was not forfeited, and was in full force, as originally issued. His sickness was, therefore, immaterial. Sickness and death were what the company undertook to insure him against. If the payment had been made in February, the certificate would have been continued in full force, notwithstanding his sickness at the time of payment. If the payment was made as a payment for the month of February, and not for reinstatement, and was accepted by the company as such, with knowledge of the fact that it was made too late under the contract, it became, as between the parties, a payment under the original contract, preserving its life and vitality. The forfeiture was waived, and, the forfeiture being waived, the contract continued in full force, with its indemnity against sickness and death.

It is argued, however, that, as the company did not know that he was sick at the time it received these payments, it

cannot be said to be estopped, or to have waived the forfeiture.

It did know of the provisions of its policy, 3. INSURANCE: life insurance: auto- and that a failure to pay within the month matic suspen- sion: avoidance suspended the member and forfeited all his of waiver. rights under the policy, and this would be true even if he were not sick; and it was then that it could have insisted upon the terms of its contract and treated the plaintiff as suspended and the contract forfeited. It elected not to do this—not to treat the plaintiff suspended or his contract forfeited for a mere failure to pay within the time. It continued his contract in force, notwithstanding this fact and knowledge of this fact, and received further assessments and dues. It therefore waived any forfeiture based upon the failure to pay within the time.

A different question would arise if the forfeiture had been insisted upon and the assured had undertaken to be reinstated under the terms of the policy. Then it would be incumbent upon the assured to make a showing as to his health, and any fraud practiced by him touching this matter would have avoided a reinstatement, or any concealment on his part of a fact that would prevent reinstatement would have been fatal to his right. We must keep always in mind the thought that the suspension and forfeiture relied upon here are related to and are involved in the one act, and that is the failure to pay the February dues during the month of February. The right to be reinstated, if forfeiture had been insisted on, is a different matter. Then the question of the health of the assured would be a matter for consideration.

It is insisted, further, that, as the society did not know of his sickness at the time it received these dues, it cannot be held to have waived the forfeiture, because, as it is assumed, if it had had this knowledge, it would not have done these acts which now are alleged to constitute the waiver. But the record discloses that it made no inquiry touching his health at the time it received these dues; that the dues were not accepted subject to any showing as to his health; that the

dues were received and accepted as a compliance with the requirements of the original contract. The company owed some duty if it desired to insist upon the forfeiture, and if it desired to accept the fees subject to a showing as to health, to so indicate to the insured; or, at least, to have made some inquiry touching the matter, before accepting the fees as a full performance of the original contract.

If this is not so, we might have this situation presented: On a certain month, the assured fails to pay his dues for that month within the time prescribed by the certificate and by-laws. It is provided that a failure to pay promptly within the time fixed automatically suspends the member and forfeits all his rights under the contract. After the time when the forfeiture could be insisted upon, the timely dues are paid, and accepted by the company on the contract. Plaintiff, at the time the defaulted payment was made, was sick, and continued sick and not in a condition for reinstatement more than sixty days. He recovers, and continues timely payments on his contract for five years, and then dies. Defendant finds that, at the time the defaulted payment was made, the assured was very sick; that it had no knowledge of this fact at the time this payment was accepted and did not learn of it until after his death. It then refuses payment, on the ground that, five years before, the assured had failed to make one monthly payment at the time stipulated in the contract. In a suit upon the certificate, defendant pleads this failure as a bar to the action, claiming that the assured became automatically suspended and his policy forfeited; though, during all this time, it received and receipted for payments as if made upon the contract, and without objection and without insisting upon the forfeiture. An application of what the defendant contends for here would defeat the plaintiff in a suit upon the certificate, under the conditions supposed. This would be neither good law nor good morals.

It is a rule of general recognition that forfeitures are not favored in the law; that where a contract, rightly and

intelligently entered into, provides for forfeiture, the one

who desires to avail himself of the forfeiture

4. INSURANCE: life
insurance: for-
feiture: waiver
of former for-
feiture.

must act promptly and fairly with the party whose rights are to be forfeited under the terms of the contract. As said in *Trotter v. Grand Lodge*, 132 Iowa 513, 526:

"Courts will be vigilant and quick to discover, and give effect to any act or circumstance from which it may fairly be argued that the insurer has waived the right to strict and literal performance."

*Rice v. New England Mutual Aid Society* (Mass.), 15 N. E. 624. This action was to recover on a mutual benefit certificate. The defense relied upon was that, under the laws of the order and the terms of the certificate, the certificate had lapsed for failure to make payment as required, and was, therefore, null and void. The certificate provided that, if a member omitted or neglected to pay within thirty days of the date of notice, then the certificate should be null and void. The assured did not pay within the time. The assessment was made on the 17th day of July, and he was required to pay within thirty days. He did not pay until the 19th day of August. On the 17th day of August, he became violently ill. On the 19th, he was taken to his home in a weak condition. He died on the 17th day of December. The cashier of the defendant company received the assessment, without inquiry or objection, on the 19th day of August, two days after it was due, and stamped a notice, "This assessment is accepted on condition that the member is in good health," and receipted for the sum paid. At the time the payment was made, on the 19th day of August, the money was sent by a messenger, who gave no information to the company as to the condition of the assured. Thereafter, and before the death of the assured, six other payments were made on this certificate, each made within the proper time. These subsequent payments were received unconditionally by the defendant, and the defendant made no inquiry as to the health of

the assured. No information was furnished as to his health. In fact, the case disclosed that the company was ignorant of the assured's health on the 19th of August and had no knowledge of his condition at the time of any subsequent payments. The lower court held that the acceptance of the six assessments, after the one paid on August 19th, without making any inquiry to ascertain the facts concerning the health of the assured, was a waiver of the breach of the certificate at the time of the August payment; that, if the company received the assessments without inquiry subsequent to August 19th, this would amount to a waiver of a default of the payment made on August 19th.

The Supreme Court of Massachusetts, in passing upon this question, said, in substance: If it be assumed that the payment on the 19th of August was too late, the question remains whether the company, by subsequent acts, waived the right to treat the policy as voided on that ground. It further said that, without expressing any opinion as to the effect of the retention of the money, the levy of the subsequent assessments and the acceptance of the money paid upon them amounted to such a waiver that, when the time came for the levy of a new assessment, if the company intended to treat the policy as still in force, he could properly be included in the assessment, otherwise not; and it held that, as the company acted under no deception or misrepresentation from the assured, but with all the information which it cared to take the pains to acquire, it made the levy and received the assessment; that it was its duty to know the condition of the assured's health before accepting subsequent payments; and that an unconditional acceptance of an assessment waives all former known grounds of forfeiture. The court used this language:

"If, before levying a new assessment, the company wished to know the particulars as to Mr. Rice's health, and thus to determine whether the payment was valid or not, it was incumbent on it to make inquiry. Instead of doing so, in-

stead of notifying him that it wished for some positive evidence or statement on the subject, instead of imposing a further condition, relating back to the time of the former payment, the company made an unconditional call upon him for the payment of the new assessment. . . . Suppose the payment of the former assessment had never been made at all, and the company, without insisting upon the nonpayment as a ground of forfeiture, had levied new assessments upon the assured, which were all paid and accepted without condition, could it be contended that there was no waiver? An unconditional acceptance of an assessment waives all former known grounds of forfeiture.''

See also *Murray v. Home Benefit Life Association*, 90 Cal. 402 (25 Am. St. Rep. 133), an action similar to the one in question, in which it is said:

''There can be no doubt that the failure of the deceased to pay the assessments of June and August within thirty days after notice thereof, released the defendant from all further liability upon the certificate held by him, if the defendant company had so elected; but conditions like that before . . . which, in effect, provide for a forfeiture of all rights thereunder, unless payment of assessments is made within the time specified, may always be waived by the party for whose benefit they are inserted in the contract; and the rule is firmly established in this class of cases that, if the insurance company, after knowledge of any default for which it might terminate the contract, enters into negotiations or transactions with the assured which recognize the continued validity of the policy, and treat it as still in force, the right to claim a forfeiture for such previous default is waived. (Citing authorities.)   Imposing or collecting an assessment by a mutual insurance company, after the company has knowledge of facts entitling it to consider the policy no longer binding upon it, without its assent, is, upon this principle, held to be a waiver of the right to claim the forfeiture which otherwise it might have insisted upon.   The cases are numerous which

hold that the acceptance of a premium after the time when it should have been paid is a waiver of the forfeiture which might have been enforced because it was not paid when due. . . . In speaking of acts showing an election to continue the existence of the policy of insurance, and to waive a forfeiture incurred, the Supreme Court of the United States, in the case of *Insurance Company v. Norton,* 96 U. S. 234, say: 'It is conceded that the acceptance of payment has this effect; and we do not see why an agreement to accept, and a tender of payment according to the agreement should not have the same effect. Both are acts equally demonstrative of the election of the company to waive the forfeiture of the policy.' "

In *Supreme Tribe of Ben Hur v. Hall* (Ind.), 79 Am. St. Rep. 262, it is said:

" 'The courts, not favoring forfeitures, are usually inclined to take hold of any circumstances which indicate an election to waive a forfeiture. A waiver may be created by acts, conduct, or declarations, insufficient to create a technical estoppel. If the company, after knowledge of the breach, enters into negotiations or transactions with the assured, which recognize and treat the policy as still in force, or induces the assured to incur trouble or expense, it will be regarded as having waived the right to claim the forfeiture.' " (Citing authority.)

See the following authorities supporting this contention: *Rasicot v. Royal Neighbors,* 18 Idaho 85 (108 Pac. 1048, 138 Am. St. Rep. 180, 29 L. R. A. [N. S.] 433) ; *Henton v. Sovereign Camp of the Woodmen of the World,* 87 Neb. 552 (138 Am. St. Rep. 500) ; *Pringle v. Modern Woodmen of America* (Neb.), 107 N. W. 756; *Schuster v. Knights and Ladies of Security,* 60 Wash. 42 (110 Pac. 680, 140 Am. St. Rep. 905) ; *Modern Woodmen of America v. Coleman* (Neb.), 89 N. W. 641.

We are not without support on these propositions in our own state. See *Bailey v. Mutual Benefit Assn.,* 71 Iowa 689;

*Tobin v. Western Mutual Aid Society*, 72 Iowa 261; *Collver v. Modern Woodmen,* 154 Iowa 615.

It is next contended that, under the by-laws and constitution of the order, this defendant was not charged with knowledge of the facts known to the local council, and that the waiver, if any, on the part of the local council, was not binding upon this defendant. This contention cannot be sustained. All the acts which constitute the waiver are, by this record, laid at the door of the president of the local council, or camp, and its financier. This contention is answered by what is said in *Trotter v. Grand Lodge,* 132 Iowa 513, 519, in which it is held that, notwithstanding the provisions of the contract to the contrary, the local council and its officers are the agents of the national council in respect to the matters here under consideration; that it does not matter what you call one, his character must be determined from what he is. The relationship of these parties to the national council created the agency which binds the principal. These parties were the agents of the mother lodge. Their conduct was its conduct. What they knew was its knowledge. It received the application for membership, received fees, charges and assessments, kept the record, and made report. The knowledge of the agent is the knowledge of the principal, within the scope of his employment. On this point, see cases above cited.

5. PRINCIPAL AND AGENT: the relation: stipulation against fact: insurance.

In *Davidson v. Temple of Supreme Tribe of Ben Hur,* 135 Iowa 88, 92, it is said:

"Whether a person is an agent of another or of an association must be determined by their relations one to another, and, if one is actually authorized to act for another in certain matters as agent, the mere fact that it has been agreed that the relationship of agency shall not exist, does not obviate the fact of such agency. Had the local scribe, as agent of defendant to collect and receive dues of the Supreme Tribe,

the power to waive the consequences of omission to make payment as required? The constitution, laws and regulations do not deny such authority, save as this may be inferred from declaring that suspension shall follow from failure to pay when due. Notwithstanding similar conditions, courts have repeatedly held that the acts of the agents may be such as will estop the company or association from taking advantage of a forfeiture" (citing *Trotter v. Grand Lodge*, supra).

As especially bearing upon this point, see *Rasicot v. Royal Neighbors of America*, supra, and cases therein cited. In *Supreme Tribe of Ben Hur v. Hall*, supra, the court used this language:

"It is true that the by-laws, after designating the officers of subordinate courts, concluded: 'These officers, when duly qualified and installed, are the agents of the members of this court, and are not for any purpose, agents of the Supreme Tribe.' The duties of an officer determine the question of his agency, and not what he may be called. He is the agent of the Supreme Tribe for doing what its by-laws require him to do as between the members of the order and the Supreme Tribe" (citing authority).

In *Pringle v. Modern Woodmen*, supra, it is said:

"It is the duty of an agent to communicate to his principal every fact affecting the transaction entrusted to his care which comes to his knowledge in the course of or during its performance, and this duty, in an action between the principal and the adverse party, the agent is conclusively presumed to have obeyed" (citing *Hargadine, McKittrick Dry Goods Company v. Krug* [Neb.], 96 N. W. 286). See also *Alexander v. Grand Lodge A. O. U. W.*, 119 Iowa 519; *Supreme Tent Knights of Maccabees v. Volkert* (Ind.), 57 N. E. 203.

It is contended, however, that, assuming that the local council and its officers were the agents of the defendant company, and that their act was its act, that their knowledge was its knowledge, yet the payment of these dues after the

time fixed in the certificate and by-laws did not reinstate the defendant, for the reason that, at the time of the payment, he was mortally ill, and therefore, under the law, could not be reinstated. This, we think, is begging the question which we have here under consideration. The date of the check indicated to the local officers, and therefore to the defendant company, that the intention of the assured in sending the check was not that he might be reinstated under the provisions of the law for reinstatement, but to make a payment on the original contract. If it had been received by the defendant company within the month of February, the condition of his health would have had nothing to do with the continuation of the policy. The forfeiture is not traceable to the condition of his health, but to the fact of nonpayment within the time provided in the policy. The defendant company, by accepting the money under these conditions, as a payment under the original contract, and not for the purpose of reinstatement, continued the policy in force and waived the failure to pay within the time. Waiver of the failure to pay within the time made the payment, in legal effect, the same as if made within the time. The acceptance of the payment after the time, with knowledge of the default, the issuing of the receipt, with the words endorsed upon it directing the sending of future assessments, and the acceptance of future assessments under the policy, constituted a waiver of the *failure to pay within the time,* and therefore made the payment the same in its legal effect as if made within the time, and bound the defendant to the contract as originally issued.

Reliance is had upon *Kennedy v. Grand Fraternity,* 36 Montana 325 (92 Pac. 971, 25 L. R. A. [N. S.] 78) ; *Royal Highlanders v. Scovill,* 66 Neb. 213 (92 N. W. 206, 4 L. R. A. [N. S.] 421). These cases involve the question of reinstatement after suspension, and after conditions had arisen which, under the contract, made the reinstatement impossible, and are not authority upon the question here. We are not un-

mindful of the fact that some cases have held that all con-
tracts of life insurance fall within one or the other of two
classes.   The first class comprehends all contracts which pro-
vide that, upon default of the member, he is liable to be sus-
pended; and the second class comprehends all contracts by the
terms of which the member's delinquency, *ipso facto*, works a
suspension and forfeiture of rights under the policy.   We are
not unmindful that, under the first class, some affirmative
action on the part of the society is necessary in order to fully
terminate the membership, and that, under the second class,
no affirmative action is required.

We are not unmindful that, under contracts of the first
class, notwithstanding the delinquency, there is the necessity
for affirmative action on the part of the society, without which
the delinquent remains a member of the society, with certain
rights and claims; while, under the second class, immediately
upon the happening of the delinquency, the membership is
terminated, and the delinquent is no longer a member of the
society.   With this distinction in mind, it has been argued
that the assured never becomes a member of the society, under
the second class, after delinquency, unless reinstated; that the
reinstatement constitutes a new contract, which requires for
its support some new consideration, while, in the first class,
before affirmative action is taken, the delinquency may be
forgiven or waived, and the member continued in the society
under the original contract.

It is contended that the assured, in the case at bar,
came under the second provision, and, therefore, his relation
having ceased upon his failure to pay for the month of Feb-
ruary, within the month of February, his contract ceased,
and that it would require some affirmative action on the part
of the assured to reinstate him; that the mere payment of
the assessment after the time, or subsequent assessments, did
not constitute a reinstatement; that there was no considera-
tion; that the assured could not have been misled, because
there was nothing that he could have done to reinstate him-

self.  He was mortally sick, and died from the sickness exist-
ing at the time of the default.  The contract provided that
the payment for the month of February should be made
within the month of February.  It provided that the member
became suspended and his contract forfeited if that payment
was not made within that time.

We are not dealing here with the question of estoppel,
but rather with the question of waiver.  Waiver involves an
intention, on the part of the person who is charged with hav-
ing waived, not to insist upon an enforcement of that pro-
vision of the contract concerning which the waiver is sought
to be shown.  Here, the waiver is of the failure to pay within
the time; the acceptance of the dues for the month of Feb-
ruary as paid within the time, with notice of the fact in the
check itself, that it was the intention of the assured to pay
within the time.  It is the waiver of the right to insist on
payment within the time stipulated by the contract that holds
the original contract in force, and therefore not, under the
holdings of some courts, the making of a new contract.  As
bearing upon this question, see *Imperial Fire Insurance Com-
pany v. Dunham,* 117 Pa. State 460 (2 Am. St. Rep. 686);
*Buchanan v. Exchange Fire Insurance Co.,* 61 N. Y. 26;
*Knickerbocker Life Insurance Co. v. Norton,* 96 U. S. 234
(24 L. Ed. 689).  In the last case, the policy provided that:

"If the said premium shall not be paid on or before
twelve o'clock noon, . . . then, and in every such case,
the company shall not be liable to pay the sum assured, or any
part thereof; and said policy shall cease and be null and
void, without notice to any party or parties interested herein."

The policy provided that the premium should be paid
annually on the 20th day of April in each year.  The assured
died, and the defense rested on the fact that the policy was
forfeited by reason of the nonpayment of certain notes given
for the last premium, which was due April 20, 1875.  The
court said, in passing upon the question:

"The written agreement of the parties, as embodied in

the policy, . . . was undoubtedly to the express purport that a failure to pay the notes at maturity would incur a forfeiture of the policy. It also contained an express declaration that the agents of the company were not authorized to make, alter, or abrogate contracts, or waive forfeitures. And these terms, had the company so chosen, it could have insisted on. But a party always has the option to waive a condition or stipulation made in his own favor. The company was not bound to insist upon a forfeiture, though incurred, but might waive it. · . . . Much stress, however, is laid on the fact that the extension claimed to have been given in this case was not given, or applied for, until after the first note became due, and the forfeiture had been actually incurred. But we do not deem this to be material. . . . The material question is, whether the forfeiture was waived; and we see no reason why this may not be done as well by an agreement made for extending the note after its maturity, as by one made before. In either case, the legal effect of the indulgence is this: The company says to the insured, 'Pay your note by such a time, and your policy shall not be forfeited.' If the insured agrees to do this, and does it, or tenders himself ready to do it, the forfeiture ought not to be exacted. In both cases, the parties mutually act upon the hypothesis of the continued existence of the policy.''

The court further said: ''Forfeitures are not favored in the law. They are often the means of great oppression and injustice.'' See also *Cohen v. Continental Fire Insurance Company*, 67 Texas 325 (60 Am. Rep. 24, 3 S. W. 296), in which it is said, in substance, that it may be considered as settled law that, when a policy provides for forfeiture upon a failure to pay premiums when due, but does not stipulate that upon such failure the overdue premiums shall be considered as earned, the demand and payment of such premium constitutes a waiver of the forfeiture; and that this is upon the principle that, in such cases, the insurance and the premium are obligations which depend upon each other, and

hence a receipt of the latter necessarily implies that the insurer recognizes or renews the original contract, and thereby assumes the continuance of the risk.

The receiving of the premium, with knowledge of the fact that it was not paid in time to avoid a forfeiture of the policy, and the receiving of subsequent premiums, constitute an election on the part of the company not to avail itself of the provisions of the policy touching forfeiture. It is a waiver of the provisions of the policy touching forfeiture, and continues the policy in force. The contract between these parties was to give and receive indemnity. The premiums were paid to secure indemnity. Subsequent payments were made for the purpose of continuing the right to indemnity under the original contract. The receipt and retention of subsequent premiums said to the assured: ''We continue your right to indemnity under your contract.'' We see now no legal reason why the company should not be required to make indemnity in accordance with the provisions of the original contract.

The facts in this case are not in dispute. There was no question of fact for the jury. The court did not err in sustaining the plaintiff's motion, upon the record made. We find no ground for disturbing its judgment, and the case is, therefore,—*Affirmed.*

EVANS, C. J., LADD and SALINGER, JJ., concur.