Lawrence, J.
This is a proceeding in error to obtain a reversal of the judgment of the court of common pleas of Cuyahoga county. The parties stand in an order the reverse of that in the court below. We will refer to them in the relation in which they stood in the trial court.
There is no dispute relative to the facts in this ■case. At the close of all the evidence the plaintiff and defendant each moved the trial court for a directed verdict, and the court directed the jury to return a verdict for plaintiff, which was done, and judgment entered thereon. Motion for new trial was overruled. ' Error is now prosecuted to this court.
The facts necessary to an understanding of the questions raised here are as follows:
One R. A. Bagnell, who was the husband of the " plaintiff, in the year 1899 became a member of the defendant association, and continued such, as claimed by plaintiff, until his death, which occurred on November 10, 1916. The membership contract of Bagnell provided that his assessments should be due quarterly, on January 5th, April 5th, July 5th and October 5th, and payable within thirty days thereafter. The contract of insurance among other things provided:
“Any member who fails to pay his assessments, or any of them, within thirty (30) days after no^ tice has been duly served upon him by mail, s'halj forfeit all benefits as ■ a member of the association, and shall no longer be in good standing; providing, however, that any member having forfeited his benefits as above by failing to pay any assessments within thirty (30) days after notice has beei) *460 served, or sent him by mail, may be restored to all benefits, he being in good health, by paying all arrearages on or before the next regular monthly meeting of the Board of Directors.
“Any member who shall have forfeited his benefits under or by virtue of his certificate of membership, shall likewise, and at the same time default occurs, and by virtue thereof, forfeit all right to indemnity and benefits of whatsoever character. Should any delinquent member at any time regain his good standing in the association in the manner above provided, his restoration thereto shall in no wise operate to entitle him or any one claiming under him to indemnity or benefits on account of any accident, injury or death received or happened while not in good standing.”
Mr. Bagnell paid his quarterly assessments on or before their due dates, except as follows:
The quarterly assessment due January 5, 1911, and payable February 5, 1911, was paid and receipted by the association March 6, 1911; the quarterly assessment due July 5, 1911, and payable August 5, 1911, was paid and receipted by the defendant association August 8, 1911; the quarterly assessment due July 5, 1915, and payable August 5, 1915, was paid by check dated August 11, 1915, received and receipted by the association August 13, 1915; the quarterly assessment due April 5, 1916, and payable May 5, 1916, was paid by check dated May 24, 1916, received and receipted by the association M.ay 25, 1916; and the quarterly assessment due July 5, 1916, and payable August 5, 1916, was paid by check dated August' 7, 1916, *461 received and receipted by the association August 9, 1916.
An attempt was made to pay the quarterly assessment due October 5, 1916, and payable November 5, 1916. Relative thereto, it appears that Mr. Bagnell on November 3, 1916, had his son-in-law, Willard Hall, draw a check for him, payable to his order, in the sum of $8.90, the amount of the assessment about to become payable. Mr. Hall drew the check, which was dated November 4, 1916, and gave it tp Mr. Bagnell. Concerning this check, counsel for defendant in his brief says Mr. Bagnell “laid it to one side, saying that he would send it with an insurance premium which was then •due. On November 7th, Mrs. Bagnell discovered 'that the check had not been mailed and mailed it to the association without having it endorsed by Mr. Bagnell. The association received the check on November 9th, 1916, and on the same day returned it, asking that it be properly endorsed. On November 10th, Mr. Hall wrote the association ■advising that Mr. Bagnell had died on the morning of November 10th, 1916, and on November 14th, upon receipt of the check so returned for endorsement, Mr. Hall again wrote reciting Mr, Bagnell’s death and enclosed his own check payable to the association for $8.90, which check and letter were received by the association on November 16th and returned by the association on that day with the statement that Mr. Bagnell was at the time of his death delinquent, thereby forfeiting all benefits of the association.”
It further appears that all prior delinquent payments were accepted in payment of the respective *462 assessments by the defendant association without making any inquiries as to, whether Mr. Bagnell was in good health.
The plaintiff claims and contends that the association’s acceptance of the two overdue payments in 1911, and the three overdue payments in 1915 and 1916, without objection and without requiring any evidence of Bagnell’s health, constituted a waiver or estoppel of the defendant association’s, right to enforce a forfeiture on account of the default in the prompt payment of the assessment payable November 5, 1916, and that when the association received the check of Willard Hall, payable to the order of Bagnell, and returned it for proper endorsement, that constituted an acceptance and thereby became and was a payment of the quarterly assessment due October 5, 1916, and payable November 5, 1916; or, if it did not receive same as payment, it showed by its course of conduct relative thereto intention to maintain the contract of insurance in full force and effect, and to waive, as it had previously done, any claim it might have 'had by reason of the failure of Mr. Bagnell to strictly comply with the terms of the contract.
On behalf of defendant it is claimed and contended that when Bagnell became delinquent 'his contract of insurance was ipso facto canceled, and his rights to benefits ceased without the necessity of any notice or affirmative act on behalf of the association, and that the continued membership of Bagnell in the association after his former delinquencies, up to the date of his last assessment, was because the association, under the provisions of its constitution and by-laws, reinstated Bagnell in *463 good standing upon his payments of past-due assessments; and this being a fact, and the record showing Bagnell to have 'been in ill health at the time the Hall check was sent to the association, there could be no reinstatement under the terms of the contract of insurance, and Bagnell forfeited his claim to benefit under the contract.
To this contention of defendant, plaintiff says that Bagnell was never suspended from the association, nor his contract forfeited, and, therefore, there could be no reinstatement; and that the acceptance by the association of his delinquent payments was a waiver of any right the company might have to forfeit the contract.
To support its claim of forfeiture" the defendant cites two Ohio cases: Ohio Farmers’ Ins. Co. v. Wilson, 70 Ohio St., 354, and Union Mut'l. Life Ins. Co. v. McMillen, 24 Ohio St., 67.
■We do not think either of these cases is in point or supports defendant’s claim of forfeiture. In the Wilson case the question decided was that a failure to pay a premium when due, there being no waiver of the provision of forfeiture, would terminate the contract of insurance; furthermore, in the Wilson case, after the loss occurred, a check, in payment of a delinquent premium, was sent the insurance company. The question in the McMillen case turned on the authority of an agent to waive forfeiture. The policy of insurance in that case specifically declared that “no agent of this company, except the president or secretary, can waive* such forfeiture,” and the agent who attempted to waive the provision .of the contract relative to for *464 feiture had no such authority, expressed or implied.
In the instant case the real controversy is whether the insurer has waived the forfeiture or 'by its course of business with the insured has estopped itself from setting up the forfeiture under the contract.
In the Wilson case, supra, the court says, at page 359:
“As this condition in the policy is made for the protection of the insurer it could be waived; but there is nothing in this case which tends to show a waiver by the insurance company.”
Counsel for defendant say that at the time the former overdue payments were received that Bagnell was in good health. This claim seems to be an unsupported assumption rather than a fact, inasmuch as the record nowhere discloses such.
We are unable to find from the record that there ever has been a breach of this contract of insurance — the defendant association never exercised the provision as to forfeiture, until the receipt of the second Hall check — and we refer to this check as “second” to distinguish it from the unendorsed check the defendant association received and returned for proper endorsement — and we are of the opinion that the purpose of 'the payments of all overdue assessments by Bagnell was not for reinstatement, but for the purpose of complying with his contract of insurance, and that they were received by the association, not for reinstatement, for the record here discloses he had never been suspended and thereby no reinstatement could take place, but were received for the purpose of dis *465 charging the original obligation. In case of reinstatement some action must be taken. Section 4 of the constitution - and by-laws of the association provides that it' shall be the duty of the secretary to “report all delinquencies to the board of directors.” This was not doné, and it confirms the foregoing statement that these overdue quarterly payments were made by Bagnell and received by the association for the purpose of complying with the terms of the contract of insurance and discharging the original obligation, and the association having accepted overdue assessments for these purposes thereby waived its right to a forfeiture and is now ■estopped to deny the right of the insured to pay the quarterly assessment, payable November 5, 1916, a few days after the time limit provided by its constitution and by-laws. But it is further ■claimed that Bagnell at the time was not in good health and ipso facto was suspended. With this contention we do not agree. The provisions in the-contract of insurance concerning the health of the insured relate and apply only to cases where there has been a suspension and- a reinstatement thereby became necessary. Bagnell never had been suspended and consequently no reinstatement could take place.
Forfeitures are not favored; they are odious; the law abhors them; and the record does not disclose any conduct' on the part of the defendant association consistent with its present stand — an intention to waive is clearly shown. However, it is -claimed that Bagnell was charged with the knowledge that on November 5, 1916, his benefits ■were automatically forfeited, and that charged *466 with this knowledge he can not now be heard to say that he intended a thing impossible by the terms of his contract. With this claim we can not agree. The -defendant association on two occasions in the year 1911, on one in 1915, and two in 1916 (these in 1916 being for two quarterly assessments immediately preceding the assessment now in question), by accepting overdue payments had in substance said to the insured, Mr. Bagnell, or at least by its conduct had led him to believe, •that his contract was in full force and effect and that no forfeiture “will hereafter be incurred if you continue to pay your assessments within a reasonable time after they become payable;” and because of this conduct we hold the defendant waived its right to declare a forfeiture of this policy by reason of the failure to pay within thirty days from October 5, 1916.
Moreover, as we understand it, the law is to be administered for the purpose of -doing exact and equal justice'to all in so far as it may be possible; and can it be said that, under all the facts and circumstances disclosed by the record in this case, it is right, just and fair for this -court to now say to the defendant association, “It is true you have heretofore by your course of dealing with the plaintiff’ led him to believe you would not insist upon the strict compliance with the terms of his contract of insurance, but now that his beneficiary is about to reap the benefit thereof you can insist and have a strict interpretation and compliance therewith” ? In other words, shall this court now do for the defendant association what it did not *467 do and would not do for itself during the life of Bagnell?
There is a great deal of law bearing upon the questions here presented, and it has. been cited in the briefs of counsel, and counsel have very fully and ably presented it in oral argument. We can not take the time -to review all these authorities; however, those upon which we chiefly rely in arriving at our conclusions, and that seem most directly in point and sustain our views', are the following cases:
O’Connor v. Knights & Ladies of Security, 178 Ia., 383, 158 N. W. Rep., 761; Knickerbocker Life Ins. Co. v. Norton, 96 U. S., 234; Swander v. Northern Cent. Life Ins. Co., 1 C. C., N. S., 233, and National Life Ins. Co. v. Tullidge, 39 Ohio St., 240.
There being no conflict in the evidence, the facts not being controverted, not in dispute, there consequently- remained nothing for the trial court but to apply the law; we are therefore of the opinion, both upon principle and authority, that the court below did not err in directing the jury at the close of all the testimony to return a verdict for the plaintiff and in entering judgment thereon.
Therefore, the judgment of the court of common pleas will be affirmed.

Judgment affirmed.

Grant and Dunlap, JJ., concur.