CARRIE T. WARREN, APPELLEE, v. GRAND LODGE OF THE ANCIENT ORDER OF UNITED WORKMEN OF NEBRASKA, APPELLANT.

FILED JUNE 29, 1920. No. 20859.

1. **Insurance: OFFICER OF SUBORDINATE LODGE: AGENCY.** An officer of a subordinate lodge of a benevolent fraternal insurance order having authority, under its by-laws, to collect and receive dues and assessments from its members is the agent of the grand body of which the subordinate lodge is a part within the scope of his authority. *Modern Woodmen of America v. Colman*, 64 Neb. 162.

2. ———: ———: ———. The acts, omissions and mistakes of such an officer, within the scope of his authority are the acts, omissions and mistakes of the grand body with which the subordinate lodge of which he is an officer is affiliated.

3. ———: ASSESSMENTS: FORFEITURE: WAIVER. Where an officer of such a subordinate lodge, having authority to collect and receive dues, receives, receipts for and retains, without objection, a sum of money from a member in payment of an assessment in the *bona fide,* but mistaken, belief on the part of both the member and the

officer that the sum so received was sufficient to pay the assessment in full, the grand body has waived any right of forfeiture for nonpayment of the assessment, and is estopped to assert it, even though the amount so received was insufficient to pay the assessment in full. *Modern Woodman of America v. Colman*, 68 Neb. 660; *Modern Woodmen of America v. Berry*, 100 Neb. 820.

APPEAL from the district court for Nuckolls county: RALPH D. BROWN, JUDGE. *Affirmed on condition.*

*Edward J. Lambe,* for appellant.

*J. H. Agee* and *R. M. Proudfit, contra.*

CAIN, C.

Plaintiff, who is the widow of the deceased insured, brought this action upon a beneficiary certificate issued by the defendant fraternal insurance order, on May 7, 1895, in the sum of $2,000, payable to her upon the death of her husband, Seth C. Warren, which occurred July 24, 1917. The defendant admitted the issuance of the certificate and the death of the insured, and pleaded that he was not "a member in good standing" at the time of his death as required by the contract, but had been suspended and had forfeited his certificate on May 29, 1917, for nonpayment of the May, 1917, assessment. To this plaintiff replied that the acts and conduct of defendant's agent constituted a waiver of the right of forfeiture, and that there was no suspension. A jury was waived and trial had to the court, and plaintiff recovered judgment for the sum of $2,135, and the additional sum of $250 as attorney's fees. The defendant appeals.

Appellant's complaint of the taxing of this attorney's fee is confessed to be just in open court by plaintiff, and suggestion made that a remittitur for that sum be entered. It is, therefore, eliminated from further consideration.

Appellant's formal assignments of error are that the judgment is contrary to law and the evidence, and that improper evidence was admitted over objection.

The substantial complaint, and the one insisted upon in appellant's brief and oral argument, is that the insured had become suspended and had forfeited his beneficiary certificate for nonpayment of the May, 1917, assessment, and had not been reinstated.

There is no material dispute about the facts, which are substantially as follows: Seth C. Warren and his wife, Carrie T. Warren, had resided near Nelson, Nebraska, for many years. On May 7, 1895, he became a member of Nelson Lodge No. 78, at Nelson, Ancient Order of United Workmen, a subordinate lodge of the defendant, and the beneficiary certificate sued upon in this action was issued to him, whereby his life was insured in the sum of $2,000, payable to his wife upon his death. He died at Duluth, Minnesota, on July 24, 1917. As far as the record discloses, he promptly paid all dues and assessments during the 22 years of his membership in the order up to May, 1917, and the facts in regard to that assessment will presently appear. On July 5, 1915, Mr. Warren had a stroke of paralysis which affected his right hand so that he could not write, and thereafter his wife attended to his writing, and, under his direction, to the payment of his lodge dues and assessments. Up to May 1, 1917, Mr. Warren's assessments had been $3 each. On January 6, 1917, at a special session of the defendant Grand Lodge, and by section 159 of the by-laws duly adopted, this assessment was raised to $13.38, to become effective May 1, 1917. The grand master, whose duty it was, duly and legally promulgated this section and mailed a copy of the promulgation to W. I. Templeton, recorder and financier of the Nelson lodge. There is no evidence that the insured ever had any actual knowledge of this increase in the assessment until about June 24, 1917, when he received a letter from Templeton dated June 4, while the insured was at North Yakima, Washington, in which he was told the amount of the new assessment but not when it became effective.

On January 18, 1917, Mr. and Mrs. Warren left their home in Nuckolls county and went to California. Thereafter, until Mr. Warren's death, they were traveling from place to place elsewhere than in Nebraska, and had no knowledge of any increase in assessments, except that derived from correspondence with Mr. Templeton, who had been recorder and financier of the Nelson lodge ever since Mr. Warren became a member in 1895, and they were close friends. Mr. Templeton died June 24, 1917, just one month before Mr. Warren's death; and his successor in office, J. W. Robey, was not appointed, or at least did not assume his duties, until some time between the 1st and 10th of July, 1917.

Before Mr. and Mrs. Warren left for California, they had a conversation with Mr. Templeton about the increase in rates, which at that time was a matter of uncertainty, and he told them that he did not know just how much they were, but would inform them when he found out. Under these circumstances and with this understanding, the Warrens left for California. On March 27 Templeton wrote Mr. Warren that there would be a raise in rates, but he could not tell how much, and further stated: "Will try to keep you informed." On May 23 Mrs. Warren wrote Templeton a letter from North Yakima, Washington, inclosing a money order for $3 for "May assessment in the A. O. U. W. for S. C. Warren." Regarding this remittance, Mrs. Warren testified: "Q. Why did you send him just $3? A. Because he had written me in March that he would keep me informed, and I had not been informed anything different." Mr. Templeton made no objection to the amount sent him, but, on the contrary, retained the $3, and on June 4 wrote Mr. Warren acknowledging receipt of that sum "for May." In this letter Templeton also said: "The new rate is $13.38 a month for you." However, he did not say when it became effective. Delivery of this letter was delayed until about June 24 on account of Warren's change of location. On June 20

Mrs. Warren wrote Templeton, asking what Mr. Warren's rate would be for June. On June 22 Templeton wrote Mrs. Warren, informing her that "the new rate went into effect June 1. Seth's would be $13.38 a month." Not knowing of Templeton's death, which occurred June 24, Mrs. Warren remitted the June and July assessments of $13.38 each and $1 for lodge dues on June 27, 1917, in conformity to the information given in Templeton's letter of June 22. Mr. J. W. Robey, who succeeded Mr. Templeton in office, testified that he received the assessments for June and July, 1917, from Mrs. Warren in the sum of $27.76, but later returned it to her sister's son. On July 13, 1917, Mrs. Warren wrote Mr. Robey from West Duluth, Minnesota, saying that she was surprised to receive his letter with draft returned, "as I paid the May assessment when in No. Yakima, Wash., and have a letter from Mr. Templeton acknowledging same." From this letter it appears that as late as July 13, 1917, eleven days before her husband's death, Mrs. Warren believed that Templeton's statement that the new rate did not become effective until June 1 was correct. The raising of rates was a matter of uncertainty and discussion in the order as late as May 10, 1917, when the defendant Grand Lodge, in session held at Omaha, decided to let the increase of January stand. The correspondence between the Warrens and Templeton clearly shows that they were much interested in any change in rates, and that Templeton was their sole source of information on that subject, and that they relied upon him entirely. Templeton's letters were all signed in his capacity as an official of the Nelson lodge. The $3 remitted by Warren and acknowledged by Templeton in payment of the assessment "for May" was never refunded. Mr. Templeton erroneously believed that the new assessment did not become effective until June 1, and so informed the Warrens. If it had not been for this erroneous belief evidenced by the information given by Templeton, the

full amount of the May assessment undoubtedly would have been paid. Otherwise, the remittance of the June and July assessments at the new rate would not have been made.

The record of the Nelson lodge contains the entry opposite Mr. Warren's name, "Suspended 5/29." Section 160 of the defendant's by-laws provides that nonpayment of an assessment on or before the 28th day of the month shall of itself work a suspension of the member and a forfeiture of his rights, and this court has held this provision to be self-executing. *Field v. National Council, K. & L. of S.,* 64 Neb. 226. Section 57 of the by-laws, which are made part of the contract of insurance, authorizes the financier to "receive all moneys for the lodge," and section 54 imposes on the recorder the duty to "conduct the correspondence and have charge of the seal and records of the lodge." And there is provision that the two offices may be combined.

It appears from the foregoing that the determining factor in this case is the group of facts relating to the May assessment. That it was not paid in full is clear, but that Mr. Warren, whose duty it was to pay it, and Mr. Templeton, who was solely authorized to receive it, both believed it to have been paid in full, is equally clear. Moreover, it is conclusively shown that the $3 remitted "for the May assessment in the A. O. U. W. for S. C. Warren" was received and retained by Mr. Templeton without objection. When Templeton wrote the Warrens on June 22 that the new rate went into effect June 1, they promptly remitted the June and July assessments at the new rate; and it is a reasonable and, we think, a necessary inference that, if it had not been for the fault of the financier-recorder in failing to inform the insured of the increase in rates, as that officer had expressly agreed to do, the May assessment would have been seasonably paid in full. The question therefore, seems to be whether this mistaken belief of the financier-recorder that the new rate

did not become effective until June 1, and his conse-
quent failure to inform the insured of the correct date
when it did become effective, can work his suspension
as a member and a forfeiture of his benefit certificate
through no fault of his own, and when the officer, with-
out objection, retained the amount actually remitted and
intended as payment of the May assessment. This
question, in turn, depends upon the authority of the
financier-recorder to bind the defendant Grand Lodge.

Under the by-laws of the order, which were express·
ly made part of the contract of insurance, Mr. Temple-
ton, who had the combined offices of financier and
recorder, had authority, and it was his duty, to collect
and receive all dues and assessments and keep a record
of them, and to conduct the correspondence. Everything,
therefore, relating to these matters was within the
scope of his authority. It follows that all letters in this
record written by Mr. Templeton were written in his of-
ficial dual capacity, and all letters addressed to him by
the Warrens were addressed to him as a lodge official.
The office held by Mr. Templeton was the only means of
communication between the defendant Grand Lodge and
its subordinate lodge at Nelson and its members. The
courts uniformly hold that such an officer is the agent
of the parent body. *Pringle v. Modern Woodmen of
America,* 76 Neb. 384; *Modern Woodmen of America
v. Berry,* 100 Neb. 820, and cases cited; *Collver v.
Modern Woodmen of America,* 154 Ia. 615; *Hendrickson
v. Grand Lodge, A. O. U. W.,* 120 Minn. 36; 19 R. C. L.
1216, sec. 31. Therefore the acts, conduct, mistakes and
omissions of Templeton were the acts, mistakes and
omissions of the defendant Grand Lodge. Hence it was
the defendant itself which, without objection, accepted,
receipted for and retained the $3 from the insured for
the May assessment, and by its silence assured and
convinced the Warrens that it was paid in full, and, so
believing, they paid the June and July assessments at
the new rate. Now, after the death of the insured, can

the defendant be heard to say to his beneficiary that the benefit certificate was forfeited because the Warrens relied upon defendant's implied assurance by retention of the May remittance that it was payment in full, or because, through fault of defendant's own agent, they were kept in ignorance of the date when the new rate became effective? In other words, can the defendant stand upon its own fault? We think not. By its conduct, through its authorized agent, the defendant clearly waived its right to a forfeiture, and is now estopped to assert it. *Modern Woodmen of America v. Colman*, 68 Neb. 660; *Modern Woodmen of America v. Lane*, 62 Neb. 89; *Grand Lodge, A. O. U. W., v. Scott*, 3 Neb. (Unof.) 851; *Trotter v. Grand Lodge*, 132 Ia. 513; *O'Connor v. Knights and Ladies of Security*, 178 Ia. 383.

From the foregoing consideration, it follows that the alleged suspension was wrongful and reinstatement unnecessary, and the benefit certificate did not become forfeited.

Counsel for appellant cites the case of *Royal Highlanders v. Scovill*, 66 Neb. 213, in support of a proposition that an officer of a subordinate lodge could not waive a forfeiture for nonpayment of assessment; but the case is not in point. In the *Scovill* case a member became suspended for intentional nonpayment of assessment, and, when she was in a dying condition, her beneficiary sought to reinstate her by paying the back dues, in the face of a provision that a suspended member could be reinstated only when in good health. Of course, the officer had no authority to waive the requirement of good health as a condition precedent to reinstatement, and it would have been a fraud upon the order to have permitted it. In the instant case, the officer had express power to receive the assessment, and it would be a fraud upon the beneficiary to permit the officer's mistake as to the amount to avoid the insurance.

Appellant also complains that the court erroneously excluded its offer of evidence that the Grand Lodge

officers knew nothing of what Templeton was doing in the premises. The complaint is without merit, as the defendant is conclusively presumed to know all the acts of the subordinate lodge officers within the scope of their authority. *Grand Lodge, A. O. U. W., v. Scott, supra.*

There is no error in the record.

We recommend that, upon plaintiff's filing with the clerk of this court, within 30 days from the filing of this opinion, a remittitur for $250 allowed for attorney's fees, the judgment of the district court be affirmed.

Per Curiam. For the reasons stated in the foregoing opinion, the judgment of the district court is affirmed, on condition that plaintiff file a remittitur of $250 within 30 days, and this opinion is adopted by and made the opinion of the court.

Affirmed.