HELLEN UDE, APPELLEE, v. MODERN WOODMEN OF AMERICA, APPELLANT.

FILED APRIL 3, 1930. No. 27118.

*Nelson C. Pratt* and *George G. Perrin*, for appellant.

*Heasty, Barnes & Rain, contra.*

Heard before GOSS, C. J., DEAN, GOOD, EBERLY AND DAY, JJ., AND CARTER AND CHASE, District Judges.

DEAN, J.

This action was begun in the district court for Jefferson county by Hellen Ude, plaintiff, to recover $1,000 from the Modern Woodmen of America, defendant, under the terms of a fraternal beneficiary insurance certificate, dated June 15, 1927, which was issued by the defendant society to her uncle, Captain C. Parker, and wherein plaintiff was named

as the sole beneficiary. Plaintiff recovered a verdict and judgment thereon for $1,086.70, from which the defendant has appealed.

In its answer the defendant society admitted that all required assessments and dues had been paid by the insured from the date of his acceptance as a fraternal member until his death, and that due notice of his death, on February 4, 1928, was given by plaintiff to defendant. But as a part of its defense the society alleged that the insured was not in sound health when the certificate was issued, and that his death "resulted directly or indirectly from his use of intoxicating liquors."

On the part of the defendant, evidence was introduced tending to prove that certain witnesses, who were members of the society, had seen Parker when he appeared to be intoxicated, and some witnesses testified that he had some difficulty in breathing at times, and that from his general appearance they did not think that he was a strong man. Other members of the order testified that, while they believed that he drank, they made no objection to his admission into the brotherhood on this ground. But some testified that they had seen him in the performance of heavy physical labor, such as cutting ice and the like, not very long before his death.

Shortly before his death, Parker went to a physician to have his throat X-rayed. This physician testified that Parker was in more or less distress just before he died, but that he appeared to be a "fairly well-nourished man." Other witnesses testified for plaintiff that they had long known Parker and that he was a strong man and appeared to be in good health and that they had never seen him intoxicated. This evidence was introduced as tending to show that Parker's health and strength and his physique were in a normal condition until he was overtaken by his final illness.

The examining physician for the defendant society testified that he examined Parker three or four days before his death and that the patient then had an attack of flu and

was suffering from some throat trouble. The immediate cause of Parker's death, he testified, was probably bronchial pneumonia. This witness also testified that he never knew of Parker calling any doctor to attend him before his last illness came upon him. This witness was by marriage related to Parker, but, of course, it does not follow that his evidence should be held for naught.

The record discloses that it was the duty of the general secretary of the society to pass upon the applications for membership; that he did not necessarily know the applicants personally but relied upon the statements of the examining physicians in respect of physical condition and the like. It appears, too, from the evidence that the secretary relied on Parker's statements in respect of health and of abstention from the use of intoxicants, just as he did in that of other applicants. And it may be noted that Parker had previously been a member of the lodge but had allowed his membership to lapse, but he was subsequently reinstated; so that he passed within the portals of the society two times. The secretary, it may be observed, pointed out that the procedure for readmittance is the same as for admittance to membership under the original application.

The evidence before us conflicts in respect of the physical condition of the injured, but there is, nevertheless, competent evidence which tends to prove that Parker was not a weakling at any time material to this controversy. Some witnesses testified that they had seen him perform strenuous manual labor shortly before his death, as noted above, and some testified that he had the appetite of an average healthy man and appeared to be fairly strong. The examining physician apparently considered him a good risk, for he so reported him to the general secretary of the defendant society. And the jury, as triers of fact, found in favor of the plaintiff on the material issues which are involved here and against the defendant society, under instructions that appear to state the law applicable to the facts.

It appears to us that when a fraternal beneficiary society issues a benefit certificate to a new member and admits the

insured to membership in the society and admits the acceptance by it of all dues and assessments required by the society under the terms of the benefit certificate, and pleads an affirmative defense, it devolves upon such fraternal society to establish such defense, and, where the evidence is conflicting, the question is for the jury. Clearly the agents of the defendant society knew of the condition of which complaint is now made long before the death of the insured, but there is not a syllable of evidence which goes to show that any of the members in any manner remonstrated with the insured in respect of his alleged fondness for intoxicating liquors. *Modern Woodmen of America v. Colman,* 68 Neb. 660; *Modern Woodmen of America v. Berry,* 100 Neb. 820; *Warren v. Grand Lodge, A. O. U. W.,* 104 Neb. 810, and cases there cited.

The jury in the present case and the trial judge alike saw and heard and observed the demeanor of the witnesses when they testified and are therefore more capable of judging of the weight of the evidence than a reviewing court which is confined to the printed page for its conclusions as to the merits of the subject-matter. This rule is so well established in this jurisdiction that it has become a fundamental in Nebraska practice. In view of the facts before us, and the law applicable thereto, we conclude that the judgment of the district court must be and it hereby is

AFFIRMED.